289 So.2d 715 (1974)
Patrick McMANNIS, Petitioner,
v.
MAD-RAY MODULARS, INC., et al., Respondents.
No. 44224.
Supreme Court of Florida.
February 6, 1974.
*716 C.R. McDonald, Jr., Fort Pierce, and the Law Office of Philip G. Nourse, Fort Pierce, for petitioner.
Monroe E. McDonald, of Sanders, McEwan, Mims & McDonald, Orlando, for respondents.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to the Florida Industrial Relations Commission.
Claimant, petitioner herein, seeks review of an Order of the Industrial Relations Commission, dated July 27, 1973, which reversed and remanded an earlier Order of the Judge of Industrial Claims which had held claimant to be permanently and totally disabled. At the hearing before the Judge of Industrial Claims, the following facts were adduced:
Claimant, a 38 year old male, possessed the equivalent of a high school diploma and had completed eight years of formal education. On August 4, 1970, he was struck by a motor vehicle while he was attempting to remove a disabled vehicle owned by employer, respondent herein, off the road. Upon leaving the hospital, claimant attempted to get a job, and attempted such jobs as picking fruit, working in a gas station, and working for a roofing company. Severe pain and fatigue prevented claimant from performing these jobs ably, and he was forced to give each one of them up. It was claimant's testimony that he went to the Rehabilitation Department to see if he could get a job, and that the Department was unable to find a job suitable for him, but rather suggested that he move to a city larger than Okeechobee, his home town, where job opportunities would be better. Claimant was not promised a job should he make the move; rather, it was merely suggested that he move to such a city to facilitate the job-finding process.
At the hearing, claimant testified that he did not wish to move to West Palm Beach, or any other city, because, although he had been living in Okeechobee County only for four and a half years, he had nevertheless lived all of his life in similar small agricultural communities; he contemplated buying property in Okeechobee; his present financial situation made it impossible for him to move to another city; and, he testified that he believed that the demands of living and working in the city were insurmountable in view of his physical disability. Also at the hearing, Mrs. Thorpe, an employment expert and manager of a local private employment agency, testified on behalf of claimant, that having interviewed claimant, having reviewed his personal and medical history, having made inquiries on his behalf, and knowing the employment situation in the four-county area surrounding Okeechobee, she personally knew of no jobs in which the claimant could be placed unless a very sympathetic employer, who would make exceptions for the claimant, could be found. Employer-carrier, respondents herein, put on no witnesses to rebut the testimony of the claimant or the employment expert.
Based on the testimony adduced at this hearing, the Judge of Industrial Claims entered an Order adjudging the claimant to *717 be permanently and totally disabled, and in support of this determination, made the following factual findings:
"... 7. The testimony of Shirley Thorpe was received into evidence and considered by the Court and that testimony is consistent with the Court's findings in this case, and consistent with common sense, and consistent with the Judge's personal experience, and it is the substance of that testimony that the claimant is not presently employable in the open labor market, there is no existing job in the four-county area in which this expert can place this claimant, that employer resistance to this claimant would be such that it does not appear likely that the claimant will be so placed in the foreseeable future, and it is the finding of this Court that this claimant is not employable, and I accept the testimony of Shirley Thorpe, an employment counselor, that the claimant is not placeable at this time in employment, and is for all practical purposes unemployable at this time, and in the foreseeable future."
"... 11. The counsel for the employer/carrier has suggested that if the claimant moved, he might find work. This contention is rejected as being speculative in that there is no existing job to which this claimant could be assured of receiving in the event that he did in fact move; impractical for the claimant has no funds, inclination, or place to move to; contrary to natural human rights in that the claimant resided in Okeechobee and intended to make it his home at the time of the accident and there is no compeling reason to conclude that he would be better off in a bigger city, as is suggested by the able and competent attorney for the employer/carrier. The Court notes the fact that New York is the largest in the United States of America and one out of seven people are unemployed in that city. The Court believes that the stress of big city living would not be conducive to a man suffering from the claimant's permanent physical defects, and therefore, categorically rejects the claim of the employer/carrier that this claim be denied for anything over and above the doctor's rating on the contention that the claimant should move to another city where he might find work." (Emphasis supplied).
The employer-carrier appealed to the Industrial Relations Commission, and the Commission reversed and remanded the cause, with directions for the entry of an Order requiring claimant to cooperatively submit himself to an approved rehabilitation program, and thereafter to enter such final order as may be appropriate, taking into consideration the report to be obtained from the Rehabilitation agency to which claimant was referred regarding the prospects for the rehabilitation of the petitioner. It was from this Order that the petition for writ of certiorari arose.
In its Order, the Commission stated:
"The evidence further discloses that the appellee has made no real effort toward rehabilitation. He apparently sought no help from the State Employment Office. The only evidence on the basis of which the Judge of Industrial Claims could rely for his award of permanent total disability is the testimony of a private employment agency manager from Fort Pierce. Careful analysis of this testimony does not reveal any substantial effort toward placing the appellee in a suitable job."
An examination of the record, however, reveals that the Judge of Industrial Claims' Order is clearly supported by competent and substantial evidence. The Judge of Industrial Claims had the benefit of the testimony by, and his own physical observation of, the claimant. Supporting this testimony as to the claimant's physical condition and limitations was the testimony by claimant's wife, and additionally, there was the testimony of Mrs. Thorpe (who had been qualified as an expert in employment placement at previous *718 workmen's compensation hearings) to the effect that claimant was not presently employable in the open labor market, that there was no existing job in the four-county area in which she could place the claimant, and that employers' resistance to the claimant would be such that it did not appear likely that the claimant would be so placed in the foreseeable future. In sum, the testimony offered on behalf of the claimant (unrebutted by a single witness on behalf of the employer-carrier) by claimant, claimant's wife, and Mrs. Thorpe, clearly provided competent substantial evidence to support the Judge of Industrial Claims' findings. Pierce v. Piper Aircraft Corporation;[1] Meadows v. Curly's Trash Service, Inc.;[2] Painter v. Board of Public Instruction of Dade County;[3] United States Casualty Co. v. Maryland Casualty Co.[4] See Johnson v. Brasington Cadillac-Oldsmobile, Inc;[5] Gibson v. Minute Maid Corporation;[6] Ross v. Roy;[7] Port Everglades Terminal Company v. Canty.[8]
Further, employer-carrier's somewhat bizarre argument adopted sub judice by the Commission, i.e., that clamant should have moved in an attempt to find work, appears to be supported neither by case nor statutory law. In fact, if such a rule of law were to be established, it would appear to be repugnant to both Federal and State Constitutions.
Finally, it should be noted that employer-carrier has raised three points in its brief. The first two essentially deal with the foregoing discussion. However, point three is directed to the award of attorney's fees, and argues that the award of attorney's fees in the amount of $16,500 is not supported by evidence and is contrary to law. The Commission, in reversing the Judge of Industrial Claims' Order "for the reasons hereinafter set forth" made no mention of the award of attorney's fees among those reasons. It would appear that to have properly brought the question of attorney's fees before this Court, employer-carrier, respondents herein, should have cross-petitioned for writ of certiorari on the issue of attorney's fees. This they have not done. Although the question of attorney's fees is therefore not properly before this Court, it should be noted that an examination of the record reveals affidavits on behalf of claimant suggesting the following awards as proper for attorney's fees in this cause: $16,500, $10,500, $9,000, and $15,000. Thus, were the question properly before the Court, we would be constrained to uphold said award as both supported by evidence and in accord with law.
Accordingly, the petition for writ of certiorari is granted, the Order of the Industrial Relations Commission is quashed, and the cause remanded with instructions to reinstate the November 27, 1972 Order of the Judge of the Industrial Claims awarding claimant permanent total disability.
It is so ordered.
CARLTON, C.J., and ERVIN, McCAIN and DEKLE, JJ., concur.
NOTES
[1] 279 So.2d 281 (Fla. 1973).
[2] 244 So.2d 417 (Fla. 1971).
[3] 223 So.2d 33 (Fla. 1969).
[4] 55 So.2d 741 (Fla. 1951).
[5] 265 So.2d 8 (Fla. 1972).
[6] 251 So.2d 260 (Fla. 1971).
[7] 234 So.2d 99 (Fla. 1970).
[8] 120 So.2d 596 (Fla. 1960).