438 So.2d 964 (1983)
Ilfautga GENELUS, Appellant,
v.
BORAN, CRAIG, SCHRECK CONSTRUCTION CO. and R.P. Hewitt & Associates, Appellees.
Nos. AQ-70, AQ-323.
District Court of Appeal of Florida, First District.
October 6, 1983.
*965 L. Barry Keyfetz, of Keyfetz, Poses & Halpern, Miami, for appellant.
Edward Almeyda, of Cornell & Almeyda, Miami, for appellees.
SHIVERS, Judge.
In this workers' compensation case Genelus appeals two orders of the deputy commissioner. The first order awards Genelus penalties and interest on wage loss benefits paid for the month of December 1981, but denies Genelus' other claims for wage loss benefits. The second order awards an attorney's fee of 25% of the benefits awarded under the first order and finds that the employer/carrier did not act in bad faith. We affirm in part, reverse in part, and remand.
Genelus is a forty-five-year-old, illiterate, Haitian male who has been in the United States for approximately three years. Although Genelus apparently speaks and understands some English, he is not fluent, and he required the use of an interpreter to testify at the hearing in this case. Claimant was a farmer in Haiti. Since coming to this country he worked as a door-to-door grass cutter and painter before his employment with appellee, Boran, Craig, Schreck Construction Co. (Boran, Craig). On March 25, 1981, while in the course and scope of his employment with Boran, Craig in Naples, Florida, claimant was injured when a big cement holder hit his head and arm. The employer furnished claimant with medical care in Naples immediately after the accident. Several weeks after the accident, claimant tried to speak with someone at Boran, Craig about compensation. That conversation resulted in the non-Haitian speaking person responding with a shake of the head and a shrug of the shoulders. Sometime shortly after this, claimant was picked up by one of his relatives and taken to the Miami area.
In Miami, claimant came under the care of Dr. Turke, a general surgeon, on April 21, 1981. Dr. Turke treated claimant primarily for the neck, back and headaches. Claimant was referred to Dr. Angelides, an orthopedic surgeon, for the injury to his hand. Dr. Angelides treated claimant from June 11, 1981, through April 27, 1982. Claimant's right thumb was operated upon on August 5, 1981, and a prosthetic joint was inserted. On November 1, 1981, Dr. Angelides felt that the claimant could return to work, performing light duties, and reported this to the carrier. The claimant was scheduled by Dr. Angelides for a second operation on March 3, 1982, but the claimant failed to keep the surgical appointment. The proposed surgery was to be a bone fusion which would have alleviated claimant's pain but would have impaired the mobility of the thumb. Dr. Angelides saw claimant again on April 27, 1982, but did not see him again thereafter. Dr. Angelides testified that claimant had a permanent impairment in accordance with the AMA Guides, but he could not state a specific percentage of impairment. He estimated the impairment at approximately 50% of the thumb. Dr. Turke reexamined claimant in September 1982. He rated claimant with a 40% disability of the right thumb in accordance with the AMA Guides and a 5% disability of the body as a whole. Dr. Turke pointed out that the prosthetic joint in claimant's thumb would eventually break down with use, and both doctors felt that activities which put direct pressure on the thumb would not be beneficial.
Claimant testified that prior to March 5, 1982, he had tried a painting job but could not finish it. On March 5, 1982, claimant went to the Florida Employment Service. After that, claimant applied for work at several restaurants where he applied for jobs as dishwasher or cleaner. He also applied at a roofing company, a construction *966 company, a manufacturing company, and approximately twenty gas stations. In August, 1982, claimant found work as a truck driver for three weeks, but he testified he could not continue because of trouble holding the wheel. Claimant admitted that during his work search he often had a problem communicating with the prospective employers. Claimant testified that he had not tried to work cutting lawns, as he had in the past, because of his hand. Claimant confined his work search to the Miami/Fort Lauderdale area, and he made no effort to return to work for Boran, Craig in Naples or to look for other work in the Naples area.
The first order of the deputy commissioner, dated September 13, 1982, and rendered following the compensation hearing, finds that claimant has a permanent impairment under the AMA Guides as a result of his industrial accident. Concerning claimant's work search, the deputy commissioner made the following findings:
7. The Claimant has inquired of a number of employers as to the possibility of work but has not found work except for a three week trucking job most recently. He worked for three weeks and testified that he was unable to operate the truck satisfactorily with his impaired hand. An examination of the Claimant's hands shows that the Claimant's right hand is heavily calloused which I find to be inconsistent with the claim that the man has not worked this year.
8. The Claimant has not attempted to return to work for this Employer and has looked for only industrial employment. Based on the medical evidence before me and my observation of the Claimant I believe that the Claimant is capable of doing some work and has a wage earning capacity in spite of his impairment. I must conclude that the Claimant has voluntarily limited his employment or, in the alternative, has in fact been working. I note that the Claimant's signature on the wage loss request forms heretofore submitted to the Carrier appears to be unimpaired, neat and legible.
Thus, it appears that the deputy commissioner relied upon two findings in determining that claimant "voluntarily limited his employment." First, claimant did not attempt to return to work for Boran, Craig. Second, claimant looked only for "industrial" employment.
The fact that claimant did not seek reemployment with Boran, Craig cannot support a conclusion of voluntary limitation of income under the circumstances of this case. At the time of his work search claimant no longer resided within commuting distance of his former employer. There is no requirement that a claimant relocate in order to have his work search deemed adequate. McMannis v. Mad-Ray Modulars, Inc., 289 So.2d 715 (Fla. 1974). As noted in McMannis, any such requirement would be constitutionally suspect.[1] Although McMannis involved a case where claimant refused to leave the community where he was injured, the result should not be different where a claimant relocates after the injury and does not return to the community where he was injured. Sub judice, there is no evidence that claimant's relocation following his injury was motivated by a desire to avoid work, nor is there evidence that jobs were more plentiful in the Naples area than in the Miami/Fort Lauderdale area. Furthermore, there is no evidence that Boran, Craig would have offered claimant reemployment had he applied for it. On these facts there is no reason to require claimant to return to Naples in order to receive workers' compensation benefits.
The deputy commissioner's reference to "industrial" employment is somewhat ambiguous. It is not clear from the record or otherwise why the claimant should be *967 penalized for seeking industrial employment. Seeking industrial employment should not be a bar to an award of wage loss benefits unless that employment was outside of claimant's limitations or abilities.
Although the two facts articulated by the deputy commissioner do not lead to a conclusion that claimant "voluntarily limited his employment," there may be other reasons why the deputy commissioner found claimant's work search inadequate. Therefore, we remand this cause for further factual findings. On remand, the deputy commissioner should make specific findings concerning the date of maximum medical improvement, claimant's physical limitations relative to employment, and the adequacy of claimant's work search.
We further note that the fact that the claimant has been working does not automatically mean that claimant is ineligible for wage loss benefits. The wage loss statute contemplates awards to claimants who are able to work or who are working. If the evidence shows that a claimant is able to work or working, the deputy commissioner must determine the "salary, wages, and other remuneration the employee is able to earn after reaching maximum medical improvement... ." This amount "shall in no case be less than the sum actually being earned by the employee... ." Section 440.15(3)(b), Florida Statutes (1981).
The deputy commissioner's order of December 28, 1982, awarding attorney's fees, must also be remanded. That order awards an attorney's fee of "an amount equal to 25% of the benefits heretofore warranted under my order." Since the amount of benefits warranted under the order of September 13, 1982, is unclear, the amount of the attorney's fee is also ambiguous. Certainty in the amount of attorney's fees awarded is essential in workers' compensation cases since it is a crime to accept fees which have not been approved by the deputy commissioner. Section 440.34(6), Florida Statutes (1981). Therefore, it is error for a deputy commissioner to award an ambiguous amount of attorney's fees. On remand, the deputy commissioner should state the amount of fees awarded as a specific dollar amount. Since the amount of benefits awarded to claimant may change after the deputy commissioner's determinations upon remand, the amount of attorney's fees awarded may also, of course, be redetermined.
We find that the record contains competent substantial evidence to support the finding of the deputy commissioner that the carrier did not act in bad faith. The December 28, 1982, order is, therefore, affirmed on the issue of bad faith. That portion of the September 13, 1982, order which awards claimant penalties and interest on wage loss benefits paid for the month of December 1981, is not in issue and is also affirmed.
Accordingly, the orders of September 13, 1982, and December 28, 1982, are AFFIRMED in part and REVERSED in part. The cause is remanded for further consistent proceedings.
NIMMONS, J., concurs.
ROBERT P. SMITH, Jr., J., concurs and dissents, with opinion.
ROBERT P. SMITH, Jr., Judge, concurring and dissenting:
On the other issues I concur in the court's judgment and in Judge Shivers' opinion, but I dissent from the court's reversal and remand on the question of whether claimant is entitled to wage loss benefits beyond December 1981. I would affirm the deputy's order in this respect.
In my opinion the deputy's findings as stated in paragraphs 7 and 8 of the order, quoted in the majority opinion, support the deputy's denial of wage loss benefits. Those findings are that claimant either searched exclusively for work he said he could not do, and so "voluntarily limited his employment," or he was able, despite his denial, to do work of that character. Countless times we have deferred to a deputy's observations of a claimant, present before the deputy, in crediting evidence received concerning claimant's disability. *968 Here, then, is a case in which the deputy, observing claimant and his "heavily calloused" right hand, which was mentioned also in claimant's testimony, doubted alternatively that claimant had sought work he could do or that he could not do the work he sought. Were this a jury verdict to the same effect, in a common law case, no appellate court would presume to overturn it. That same deference is due the verdicts, or fact-findings, of deputy commissioners. Beyond that, I see no need to remand for further factual findings. If those we have are not sufficient, I am unable to conceive of what other reasons for denying benefits could be judged sufficient.
NOTES
[1] The MacMannis court stated:

Further, employer-carrier's somewhat bizarre argument adopted sub judice by the Commission, i.e., that claimant should have moved in an attempt to find work, appears to be supported neither by case nor statutory law. In fact, if such a rule of law were to be established, it would appear to be repugnant to both Federal and State Constitutions.
289 So.2d at 718.