769 P.2d 572

**Glenn COMBS, Claimant/Appellant,**

v.

**KELLY LOGGING, Employer,**

**and**

**Employers' Insurance of Wausau, Surety, Defendants/Respondents.**

**No. 16909.**

Supreme Court of Idaho.

Feb. 13, 1989.

Seiniger & Nevin, Boise, for claimant/appellant. Wm. Breck Seiniger, Jr., argued.

Cantrill, Skinner, Sullivan & King, Boise, for defendants/respondents. David R. Skinner argued.

BISTLINE, Justice.

Claimant Glenn Combs back was injured in an industrial accident while removing "wrappers" on a loaded log hauling truck. Combs subsequently underwent surgery for a herniated disc. All doctors involved agreed that Combs suffers a partial permanent impairment rating of 10 percent. Combs' primary argument is that the Commission erred in awarding a permanent partial disability equivalent to only 35 percent of the whole person, and should have found that he falls into the "odd-lot" category. Although we cannot agree with Combs' contention that he is an "odd-lot" worker *as a matter of law,* for reasons explained below we do reverse and remand to the Commission for further proceedings.

I.

Combs is 49 years old, married, and has two married children. He has a tenth grade education and has lived in Salmon, Idaho, most of his life. He worked for Kelly Logging from 1972 until his accident on November 3, 1983.

As a Kelly Logging truck driver, Combs averaged 75 hours a week at $8.40 an hour, thereby averaging $630 a week. Combs' job required him to haul logs in and around Missoula, Montana. He spent five out of seven days living in, or at least based out of, a motel in Missoula. Combs returned to Salmon only on the weekend. As noted, Combs injured his back on November 3, 1983, in Missoula while unloading his truck. In January 1984, Combs underwent surgery for a herniated disk. The operation was somewhat successful, but the Commission found that Combs cannot return to his prior job because he should not lift more than 50–60 pounds at any time.

After convalescence from the surgery, Combs began retraining as a commercial pilot. He and his wife own a 50 percent interest in an air service business, partially owned and fully operated by his son. The cost of the retraining was $4000, with $2000 paid for by the surety and $2000 by the Idaho Division of Vocational Rehabilitation. However, the Commission found that Combs cannot work as a pilot because he is required to take medication (making flying dangerous) and because of Combs' restrictions as to weight lifting.

The Commission found that Combs is permanently physically impaired to the extent of 10 percent of the whole person. This finding is not in dispute. The Commission also concluded that Combs is permanently partially disabled to the extent of 35 percent of the whole person. The Commission specifically rejected Combs' argument that he falls into the odd-lot category, and found that Combs is still able to do medium and light duty work. Of significance on our review, the Commission included the labor market of Missoula, Montana, as well as Salmon, Idaho, as a reasonable geographic area with which to determine Combs' post-accident potential for finding a job. In finding that Combs did not fall into the odd-lot category, the Commission relied on the fact that Combs had

failed to establish that he attempted to secure work in Missoula, Montana.

## II.

Appellate review of findings of fact made by the Commission is limited in scope. Findings supported by substantial competent evidence will not be disturbed on appeal. *Greenrod v. Parris*, 115 Idaho 109, 110, 765 P.2d 134, 135 (1988); Idaho Const. art. 5 § 9; I.C. § 72–732. However, we are not bound by conclusions of law drawn by the Commission; an order of the Commission must be set aside where the law is misapplied to the evidence. On questions of law we exercise free review. Idaho Const. art. 5, § 9, *supra*.

■ In determining Combs' permanent disability, the Commission considered Missoula, Montana, as a potential labor market. The Commission reasoned that, because Combs had previously worked in the Missoula area, the Missoula labor market area would properly be taken into account when considering his diminished ability "to compete in an open labor market within a reasonable geographic area" pursuant to I.C. § 72–430.[1]

Claimant argues that the Commission erred in so doing. The Commission's opinion made no mention that the distance between Salmon, Idaho and Missoula, Montana is 129 miles, and is over and across a high mountain pass. Combs' pre-injury weekly wage, as found by the Commission, was $630. As a result of his injury Combs can now only expect to make $167 per week no matter where he works.[2] Thus, Combs' earning potential has *dropped* by 74 percent.

It is well established, even without legislative statutory direction, that a worker who sustains an industrial accident is not required to move from his or her home to find suitable work in order to be eligible for worker's compensation. Rather, the worker must only seek work a reasonable distance from his or her home. Professor Larson, in his leading treatise on worker's compensation, writes:

> [T]he test of reasonableness does not require the claimant to look for work beyond the general area in which he lives.

2 A. Larson, *Workmen's Compensation Law* § 57.61(d), at 245 (1985) (footnote omitted). Case law elsewhere is in accord with this proposition. *E.g., Phelps Dodge Corp. v. Industrial Comm'n*, 90 Ariz. 248, 367 P.2d 270 (1961) (claimant did not have to leave local community to find work); *Edwards v. Industrial Comm'n*, 14 Ariz. App. 427, 484 P.2d 196 (1971) (commission erred in using wages earned in foreign state as a basis for determining earning capacity); *McMannis v. Mad–Ray Modular Inc.*, 289 So.2d 715 (Fla.1974) (claimant need not move to larger city to find employment). Moreover, once a claimant establishes that he or she falls into the odd-lot category, an issue which we will discuss in a moment, it is incumbent upon the surety or indemnity fund to establish "that there is an actual job within a *reasonable distance from appellant's home* which he is able to perform or for which he can be trained." *Lyons v. Industrial Special Indemnity Fund*, 98 Idaho 403, 407, 565 P.2d 1360, 1364 (1977) (emphasis added). Without question, Comb's home is in Salmon, Idaho.

---

1. Idaho Code § 72–430 provides in part:

   **72–430. Permanent disability—Determination of—Percentages—Schedule.—**(1) Matters to be considered. In determining percentages of permanent disabilities, account shall be taken of the nature of the physical disablement, the disfigurement if of a kind likely to handicap the employee in procuring or holding employment, the cumulative effect of multiple injuries, the occupation of the employee, and his age at the time of the accident causing the injury, or manifestation of the occupational disease, *consideration be-*

   *ing given to the diminished ability of the afflicted employee to compete in an open labor market within a reasonable geographical area* considering all the personal and economic circumstances of the employee. (Emphasis added.)

2. The Commission cited the testimony of a vocational consultant, who stated that Combs could expect to make between $3.50 and $5 an hour in the future. Thus, at forty hours per week, Combs' average expected wage would be about $167.

We cannot but conclude that the Commission erred as a matter of law in considering Missoula as a realistic potential labor market in determining Combs' permanent disability. As a result of his industrial accident, Combs' expected income anywhere has dropped 74 percent.[3] He has lived in Salmon his entire life, save for a few years serving in the National Guard. With a 74 percent decrease in wages, the only economically realistic way Combs could work in Missoula would be to leave his home in Salmon, Idaho, and find living quarters in Missoula, Montana. Such a result would contravene settled Idaho precedent, statutory law, and vitiate the humane purposes which the Workmen's Compensation Law was intended to further. Doubtful cases should be resolved in favor of the worker who has been injured. *Kiger v. Idaho Corporation*, 85 Idaho 424, 432, 380 P.2d 208, 216 (1963). This, however, is not a doubtful case. Accordingly, we reverse and remand for further proceedings.

■ Our decision today, however, does not require that we conclude as we did in *Lyons v. Industrial Special Indemnity Fund, supra*, that claimant falls into the odd-lot category as a matter of law. The facts in *Lyons* were far more compelling that those presented here, leaving us unable to apply the principle that, "Where the evidence is undisputed and is reasonably susceptible to only one interpretation, whether a claimant falls within the odd-lot category is a conclusion of law." 98 Idaho at 407, n. 2, 565 P.2d at 1364, n. 2.[4] Therefore, we remand to the Commission for a determination whether the disputed facts in this case support a finding that Combs is an odd-lot worker, or if not, the extent by which Combs' disability from work exceeds his permanent physical impairment. Upon remand the Commission will not consider Missoula, Montana, as the statutory rea-

sonable geographic area, but rather Salmon, Idaho, which is clearly claimant's residence, and was so at the time of the industrial injury, and had been for many years.

### III.

■ The final issue concerns the retraining program undertaken by claimant and paid for equally by the Idaho Department of Vocational Rehabilitation and the surety. The surety argues that it should be permitted to deduct the cost of Combs' unfruitful retraining program against the sum paid for permanent disability. The surety, however, did not raise this issue before the Commission, nor did it perfect a cross-appeal before this Court. It is well established that arguments raised for the first time on appeal will not be heard. *Baldner v. Bennett's, Inc.*, 103 Idaho 458, 649 P.2d 1214 (1982); *Green v. Young*, 102 Idaho 735, 639 P.2d 433 (1981); *Silver Syndicate, Inc., v. Sunshine Mining Co.*, 101 Idaho 226, 611 P.2d 1011 (1979); *McNeil v. Gisler*, 100 Idaho 693, 604 P.2d 707 (1979). Accordingly, we therefore decline to address the surety's assignment of error.

*Reversed and remanded* for reconsideration of claimant's present and future ability to obtain gainful employment under the provisions of I.C. § 72–425. The Commission shall not consider Missoula, Montana, as a potential labor market, but only the geographic areas of reasonable distance from claimant's home.

Costs to claimant; no attorney fees on appeal.

HUNTLEY and JOHNSON, JJ., concur.

BAKES, Justice, dissenting:

I dissent from the holding by the majority that *as a matter of law* the Missoula labor market cannot be included in claim-

---

3. Clearly this is an "economic" factor which should weigh heavily in the Commission's evaluation of permanent disability. *See* I.C. § 72–430, quoted *supra* at note 1.

4. The claimant in *Lyons* suffered a host of debilitating physical limitations: a binaural hearing impairment, five back injuries, a twice fractured right leg, injuries to both eyes, and lung damage. We held there that the evidence placed the claimant in the odd-lot category as a matter of law. *Id.* Here, however, we have concluded to extend the making of that decision to the Commission.

ant's "reasonable geographic area" within which his employability must be assessed. What constitutes an employee's "reasonable geographic area" is a question of fact to be determined by the Industrial Commission after "considering *all* the personal and economic circumstances of the employee...." I.C. § 72–430 (emphasis added). Here the "economic circumstances of the employee" were that for years he had lived in Salmon, but made his living working in the Missoula, Montana, area. In Finding of Fact XXIX, the commission found:

> "*Of additional significance is the fact that at the time of his accident and for an extended period of time prior to that, although Claimant's home and family remained in Salmon, Claimant actually spent five out of seven days living in, or at least based out of, a motel in Missoula, Montana. We think these circumstances constitute those types of 'personal and economic circumstances of the employee' which the legislature has directed that we consider in assessing Claimant's permanent disability under I.C. § 72–430. We therefore conclude that it is appropriate to include the labor market of Missoula, Montana, in Claimant's 'reasonable geographic area' within which his employability must be assessed, since Claimant was not truly earning his living through work done in the Salmon area at the time of his accident or for some time prior to that. In other words, it does not seem unreasonable at this point to require Claimant to seek suitable medium and light duty work in Missoula, Montana or areas a comparable distance from Salmon which would allow him to return home to Salmon on the weekends, since this is exactly the type of arrangement under which he was gainfully employed prior to his injury. The record is devoid of any evidence that Claimant has sought such work in Missoula or areas a comparable distance from Salmon, nor is there any evidence that no labor market exists within those areas for medium and light duty work.*" (Emphasis in original.)

Where there is substantial competent evidence to support the commission's factual finding, such finding will stand on appeal. Idaho Const. art. 5, § 9; I.C. § 72–732(1); *Johnson v. Bennett Lumber Co.*, 115 Idaho 241, 766 P.2d 711 (1988).

The majority opinion simply overlooks the fact that substantial competent evidence supports the commission's finding. For many years preceding the accident, Combs voluntarily chose, for whatever reasons, not to work in his home town. Combs chose instead to make a city, several hours' driving distance away, his place of employment.

The majority so narrowly constricts its reading of I.C. § 72–430 as to actually judicially modify the statute. By requiring the Industrial Commission to *only* consider the geographic area around an employee's "*home*", the majority directly contradicts the requirement of I.C. § 72–430 that "*all* the personal and economic circumstances of the employee" (emphasis added) be considered when factually determining the employee's "reasonable geographic area."

The narrow reading of I.C. § 72–430 presumes, as a matter of law, that all employees work at or near their homes. As the commission recognized, many employees in today's mobile society choose to work away from their homes, returning periodically to be with their families. Indeed, many types of employment require away-from-home performance, *e.g.*, trucking, shipping, busing, flying and traveling sales. Likewise, many jobseekers voluntarily choose to work in one place while making their home elsewhere for economic reasons (*e.g.*, relatively better pay or promotion opportunities in the work area) and for personal reasons (*e.g.*, relatively better living conditions at home or, perhaps, no desire to live at home).

While Combs' injury prevented him from performing the type of work he performed while in Missoula, there is nothing in the record which indicates that it impaired his ability to continue to work in Missoula. If his injury prevented him from performing heavier duty employment which pays a higher hourly rate, that was evidence

which the commission should, and did, consider in arriving at its factual findings. However, it is error for this Court to exclude the commission from considering that relevant evidence.

SHEPARD, C.J., concurs.