SONNIE P. HARMON, APPELLEE AND CROSS-APPELLANT, V.
IRBY CONSTRUCTION CO. AND LIBERTY MUTUAL
GROUP INS. CO., APPELLANTS AND CROSS-APPELLEES.
604 N.W.2d 813

Filed December 23, 1999.    No. S-99-081.

Thomas D. Wulff and Timothy G. Himes, Sr., of Welch, White & Wulff, for appellants.

Anne E. Winner, of Keating, O'Gara, Davis & Nedved, P.C., for appellee.

Joseph Dowding, of Dowding, Dowding & Dowding, for amicus curiae Nebraska Association of Trial Attorneys.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Sonnie P. Harmon sustained a work-related injury and was awarded workers' compensation benefits by a single judge of the Nebraska Workers' Compensation Court. A review panel affirmed the trial judge's award of permanent total disability benefits, reversed the trial judge's determination of Harmon's average weekly wage and remanded for a recalculation of the temporary total disability benefits, and reversed the award of

attorney fees and remanded for a determination of a reasonable attorney fee.

Harmon's employer, Irby Construction Co. (Irby), and its insurer, Liberty Mutual Group Ins. Co. (Liberty), appeal the review panel's decision affirming the trial judge's award of permanent total disability benefits and the trial judge's finding that Harmon's refusal to relocate did not constitute a failure to comply with his vocational rehabilitation plan. Harmon cross-appeals the review panel's reversal of the trial judge's calculation of his average weekly wage and the award of attorney fees.

## SCOPE OF REVIEW

■ Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1998), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of the court's powers; (2) the judgment, order, or award was procured by fraud; (3) there is insufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998).

■ Upon appellate review, the findings of fact by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.*

■ If the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court, an appellate court is precluded from substituting its view of the facts for that of the Workers' Compensation Court. *Id.*

## FACTS

Harmon petitioned the Workers' Compensation Court for benefits, seeking compensation for a low back injury sustained November 24, 1995, while Harmon was employed by Irby. Irby and Liberty (collectively the defendants) filed a joint answer in which they admitted that Harmon was employed by Irby on the date of his injury, that the injury arose out of and in the scope of his employment, and that they had paid Harmon some medical and indemnity benefits. The defendants denied all other allega-

tions and alleged that Harmon had not complied with his vocational rehabilitation counselor's recommendations.

At trial, it was established that Harmon had relocated from McKenney, Virginia, to Superior, Nebraska, 6 days prior to being injured. After his injury, Harmon sought medical treatment from Dr. Douglas Long, an Omaha neurosurgeon, who performed low back surgery and provided postsurgical care throughout 1996. Following surgery, Harmon complained of incapacitating back pain and lower extremity problems.

The parties stipulated that Harmon's total earnings were $487.21 per week, or $12,667.46, for the 26 weeks preceding his accident and injury. The parties, however, could not agree whether a $30 per diem payment should be added to the average weekly wage calculation. Harmon proved that he had worked for Irby since 1994 and that immediately before moving to Nebraska, he had worked in Virginia. According to Harmon, he left a project in Virginia and continued his employment with Irby by relocating to a worksite in Superior, Nebraska. The project in Nebraska provided for a $30 per diem payment which was characterized as an incentive to get workers to Nebraska, and Irby had structured the per diem payment so that Harmon paid income tax on it. The trial judge concluded that the per diem payment was income and, thus, should be included in calculating Harmon's average weekly wage. The trial judge found that Harmon's average weekly wage was $697.21, which was calculated by multiplying the $30 per diem times 7 days a week for a total of $210 and adding the per diem to the stipulated weekly earnings of $487.21.

The trial judge concluded that as a result of the November 24, 1995, accident, Harmon was temporarily totally disabled from and including December 5, 1995, to and including September 30, 1996, and again from and including March 17, 1997, through and including May 16, 1997, for a total period of $51^5/_7$ weeks and that at all other times, Harmon was permanently totally disabled. The trial judge then awarded Harmon benefits of $350 per week for the $51^5/_7$ weeks of temporary total disability and $350 per week for all times during which he was and continues to be permanently and totally disabled.

Next, the trial judge found that the defendants refused or neglected payment of a medical bill after 30 days' notice had been given to them of the obligation to pay the bill and that Harmon was therefore entitled to attorney fees in the amount of $3,904. The medical bill which the defendants were said not to have paid was a $165 bill due to the Lincoln Orthopedic & Sports Medicine Clinic.

Finally, the trial judge found that Harmon was unemployable because of his physical impairment and because of the depressed labor market in the Superior, Nebraska, area. Thus, the trial judge adjudged Harmon permanently totally disabled.

On appeal, the review panel concluded the trial judge erred as a matter of law regarding calculation of Harmon's average weekly wage because it had included a $30 per diem payment for the entire 26-week period prior to his injury when Harmon had been paid the per diem for only 6 days prior to his injury.

The review panel upheld the trial judge's finding that the defendants had failed to pay a bill due the Lincoln Orthopedic & Sports Medicine Clinic in the amount of $165 within 30 days after notice of the obligation for payment was given. Although the trial judge had awarded attorney fees based upon counsel's itemized statement of 36.2 hours of work on the case, the review panel's survey of the itemized statement showed that most of the time spent by the attorney and paralegal had nothing to do with collection of the $165 medical bill. The review panel concluded that Neb. Rev. Stat. § 48-125 (Reissue 1998) permitted a reasonable attorney fee for the collection of delinquent medical bills, but did not entitle a claimant to an automatic award of all attorney fees, and therefore remanded to the trial judge for a determination of what constituted a reasonable attorney fee.

## ASSIGNMENTS OF ERROR

The defendants assign as error that the review panel erred in affirming the trial judge's award of permanent total disability benefits and in affirming the trial judge's finding that Harmon's refusal to relocate did not constitute a failure to comply with his vocational rehabilitation plan.

Harmon cross-appeals, assigning as error that the review panel erred in reversing the trial judge's calculation of average weekly wage and award of attorney fees.

## ANALYSIS

The defendants first argue that the review panel erred in affirming the trial judge's award of permanent total disability. Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform. *Yarns v. Leon Plastics, Inc.*, 237 Neb. 132, 464 N.W.2d 801 (1991). Whether a claimant has sustained disability which is total or partial and which is temporary or permanent is a question of fact. *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 464 N.W.2d 343 (1991).

Upon appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998). In our review of the decision made by the review panel affirming the trial judge's finding that Harmon was entitled to an award of permanent total disability benefits, we may modify, reverse, or set aside the Workers' Compensation Court decision only if (1) the compensation court acted without or in excess of the court's power; (2) the judgment, order, or award was procured by fraud; (3) there is insufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. See *id.*

The evidence establishes that Harmon was treated and observed by several doctors. In January 1996, he was evaluated by Long. An MRI scan of the lumbar spine dated December 28, 1995, showed that Harmon suffered from degenerative disk disease. Long recommended that Harmon undergo physical therapy, and when Harmon failed to improve, Long recommended that he have surgery. Following surgery, Harmon continued to complain of pain in his left leg, and Long recommended that another MRI be performed on Harmon's back. When no significant improvement was noted in Harmon's symptoms, Long recommended pursuing job retraining.

In July 1996, a functional capacity assessment was performed. The evaluation noted a limited ability to lift, stand, sit,

or walk. Six months after Harmon's back surgery, Long opined that Harmon had reached maximum medical improvement and concluded that Harmon suffered a 10-percent impairment of the body as a whole. It was Long's opinion that Harmon was "completely disabled from his previous employment" and that he should receive vocational rehabilitation.

Harmon was eventually sent to Patricia Conway, a rehabilitation consultant, for evaluation. Conway conducted a loss of earning capacity analysis, and based on the information in the functional capacity assessment, she reported that Harmon would be restricted to sedentary work activity with an alternate sit-stand option and that he would have a limited ability to bend, climb stairs, crouch, kneel, balance, and squat. Conway concluded that Harmon had no skills which could be transferred to light and sedentary work and therefore opined that any future jobs would be limited to unskilled and possibly semiskilled jobs within the sedentary work category. Conway estimated that Harmon's loss of access to the labor market was approximately 65 to 70 percent.

Conway opined that Harmon was best suited for a light assembly or packing job because he was limited to a 10-pound lifting restriction, and she suggested that he become involved in security work. She stated that Harmon could return to work with his present skills and ability at a pay rate between $5.50 and $7 per hour. Returning to the work force at this rate of pay would cause Harmon to suffer a 70-percent loss of wages.

Based upon this information, Conway opined that Harmon's permanent loss of earning capacity was approximately 75 to 80 percent and that this loss of earning capacity would not improve. Although Harmon qualified for vocational rehabilitation, Conway doubted that Harmon possessed the academic skills to benefit from such rehabilitation. Conway had repeatedly discussed with Harmon the possibility of moving to a community with a better job market, but Harmon had refused.

In summary, the evidence establishes that Harmon had worked as a lineman for Irby for 1 year at the time of his injury. He had minimal education and possessed no other training or skills. A functional capacity assessment indicated that he could sit for 30 minutes at a time if he took regular breaks to decrease

discomfort and that he could stand for 15 minutes with the use of a cane. The evidence also showed that he could tolerate only occasional short walks. The doctors who examined him agreed that after reaching maximum medical improvement, he suffered a 10-percent impairment to the body as a whole and was unable to return to his previous line of work.

■ Although there is conflicting medical evidence, we conclude that the evidence is sufficient to support the finding of the trial judge that Harmon has a permanent total disability. Section 48-185 precludes an appellate court's substitution of its view of the facts for that of the Workers' Compensation Court if the record contains sufficient evidence to substantiate the factual conclusions reached by the Workers' Compensation Court. *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996).

The defendants also argue that the trial judge erred in considering Superior, Nebraska, to be Harmon's exclusive employment market because he might be employable in another community even with a 10-percent whole-body impairment. The defendants argue that Harmon's refusal to relocate is tantamount to a refusal to cooperate with his court-appointed rehabilitation program. We disagree and find that this argument has no merit.

■ As previously stated, a determination of to what extent an employee suffers from a disability is a question of fact; however, a determination of what things might be considered in assessing disability involves statutory construction and thus is a question of law. See *City of Omaha v. Morello*, 257 Neb. 869, 602 N.W.2d 1 (1999). As to questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Id.*

The review panel found no error of law in the trial judge's refusal to consider relocation as a factor in assessing the degree of Harmon's disability. The trial judge's order provides:

> Finally, counsel for the defendant[s urge] that the Court should require the plaintiff and his family to move from Superior, Nebraska to an area that is more ripe with the fruits of employment possibilities. The Court declines to do so. Requiring injured workers to uproot themselves is not supported by law or the practicalities of life.

We also conclude that Harmon's refusal to move was not a failure to cooperate with his vocational rehabilitation plan, for failure to relocate cannot be considered in assessing the degree of a claimant's disability. Other jurisdictions which have addressed the issue of requiring a workers' compensation claimant to relocate have reached the same conclusion.

In *McMannis v. Mad-Ray Modulars, Inc.*, 289 So. 2d 715 (Fla. 1974), the rehabilitation department of the workers' compensation court had been unable to find the claimant a job and suggested that he move to a larger city where job opportunities would be better. The trial court rejected the suggestion that the claimant be asked to move and stated:

> "This contention is rejected as being speculative in that there is no existing job to which this claimant could be assured of receiving in the event that he did in fact move; impractical for the claimant has no funds, inclination, or place to move to; contrary to natural human rights in that the claimant resided in Okeechobee and intended to make it his home at the time of the accident and there is no compelling reason to conclude that he would be better off in a bigger city . . . ."

(Emphasis omitted.) *Id.* at 717. See, also, *Combs v. Kelly Logging*, 115 Idaho 695, 769 P.2d 572 (1989); *Fredenburg v. Control Data Corp.*, 311 N.W.2d 860 (Minn. 1981); *Litzinger v. W.C.A.B. (Builders Transport)*, 731 A.2d 258 (Pa. Commw. 1999).

Here, Harmon expressed no interest in moving and has no guarantee of a job were he to move. Thus, we find that the trial judge and the review panel correctly concluded that Harmon cannot be required to move to find employment and correctly concluded that Harmon's failure to move is not a factor which may be considered in assessing his disability.

■ We next address Harmon's cross-appeal, in which he attacks the review panel's reversal of the trial judge's calculation of his average weekly wage. Neb. Rev. Stat. § 48-126 (Reissue 1998) provides:

> In continuous employments, if immediately prior to the accident the rate of wages was fixed by the day or hour . . . [the employee's] weekly wages shall be taken to be his or

her average weekly income for the period of time ordinarily constituting his or her week's work, and using as the basis of calculation his or her earnings during as much of the preceding six months as he or she worked for the same employer . . . .

The determination of how the average weekly wage of a workers' compensation claimant should be calculated is a question of law. *Hull v. Aetna Ins. Co.*, 249 Neb. 125, 541 N.W.2d 631 (1996).

The trial judge included the $30 per diem Harmon was earning at the time of his injury as part of his average weekly wage and concluded that Harmon was receiving an average weekly wage of $697.21 for the 26 weeks preceding the accident. However, the record reveals that Harmon did not earn the $30 per diem each day for the 26 weeks preceding the injury. Thus, applying the $30 per diem to the preceding 26 weeks distorted the calculation of Harmon's average weekly wage. The review panel properly concluded that the $30 per diem should be considered income only for the 6 days which Harmon actually earned it. Therefore, we find Harmon's assignment of error on this issue to be without merit.

Finally, Harmon claims that the review panel erred in reversing the trial judge's award of attorney fees in the amount of $3,904. Pursuant to § 48-125(1), whenever an employer

neglects to pay medical payments subject to [Neb. Rev. Stat. § 48-120 (Reissue 1998)] after thirty days' notice has been given of the obligation for medical payments, and proceedings are held before the Nebraska Workers' Compensation Court, a reasonable attorney's fee shall be allowed the employee by the compensation court in all cases when the employee receives an award.

We have not previously defined what constitutes a reasonable attorney fee pursuant to § 48-125. In other contexts, the value of legal services rendered by an attorney is determined by considering the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and

the customary charges of the bar for similar services. *Zimmerman v. FirsTier Bank*, 255 Neb. 410, 585 N.W.2d 445 (1998).

In *Ward v. Phoenix Operating Co.*, 729 So. 2d 109, 113 (La. App. 1999), the court stated:

> The award of attorney fees is a type of penalty in workers' compensation matters. . . . However, the penalty for the behavior is the imposition of the attorney fee, rather than the amount of the attorney fee. The amount of the fee must be assessed in accordance with law, i.e., the fee must be reasonable. . . . Thus, the court must assess the degree of skill involved and the amount of time counsel spent representing the claimant to arrive at a reasonable attorney fee.

Thus, we conclude that an award of attorney fees pursuant to § 48-125 must be calculated on a case-by-case basis and that in this case, particular attention should be given to the amount of legal work performed in relation to the amount of the unpaid medical bill and the amount of the unpaid medical bill in relation to the workers' compensation award received.

Exhibit 15 is an itemized list of the hours which Harmon's attorney and his legal staff worked on this case. Of the 36.2 hours documented, only a fraction can be directly attributed to collection of the unpaid medical bill. Furthermore, the defendants made timely medical payments in excess of $50,000 before the case came to trial. In light of these facts, the review panel correctly remanded the award of attorney fees. Allowing a claimant to recover all of his or her attorney fees based on the failure of a defendant to pay such a bill would provide the claimant with a windfall. This is not a result dictated by the plain language of § 48-125.

## CONCLUSION

With regard to the defendants' assignments of error, we find no error in the review panel's conclusion that Harmon is entitled to an award of permanent total disability benefits and that Harmon should not be compelled to relocate in order to receive those benefits. With regard to Harmon's cross-appeal, we find no merit to the claim that the review panel erred in remanding

for a recalculation of his average weekly wage and determination of a reasonable attorney fee. Thus, the judgment of the review panel is affirmed. We award Harmon the sum of $2,000 to apply toward the services of his attorney in this court.

AFFIRMED.

HENDRY, C.J., not participating.

GERRARD, J., concurring.

I concur in all respects with the result reached by the majority, but write separately regarding the issue of payment of attorney fees. I agree that attorney fees of $3,904, which represented all attorney time and paralegal time spent in prosecuting the entire case, is not a "reasonable attorney's fee" for the collection of the $165 medical bill. See Neb. Rev. Stat. § 48-125 (Reissue 1998). Even though the trial judge properly determined that the employer failed to pay the expense of Dr. Daniel Noble at Lincoln Orthopedic & Sports Medicine Clinic in the amount of $165 within 30 days after notice of the obligation for payment of that account, it is quite apparent from a review of the record that collection of this medical bill was incidental to the filing of Harmon's claim for permanent total disability benefits.

However, I would not hesitate to assess an entire attorney fee in those cases where one of the underlying reasons for the filing of the workers' compensation claim is to establish compensability for a delinquent medical bill. In such cases, of course, a workers' compensation claimant must prove all elements of compensability in order to successfully obtain an award on the medical payment. See § 48-125. See, also, Neb. Rev. Stat. § 48-101 (Reissue 1998).

The purpose of the provision for attorney fees in § 48-125 is to encourage prompt payment by making delay costly if an employer neglects to pay medical payments after 30 days' notice has been given of the obligation for the medical payments. Nonpayment of medical bills can have an extremely deleterious result for an injured worker. Necessary medical care may be delayed for months pending litigation, which in itself may cause more severe permanent injury. See *Ihm v. Crawford & Co.*, 254 Neb. 818, 580 N.W.2d 115 (1998). To limit the award of attorney fees in every case to only the amount of time expended in

recovering a specific, unpaid medical bill would (in the words of dissenting Workers' Compensation Court Judge Ronald L. Brown) effectively transform § 48-125 into nothing but "an annoying, yippy little porch dog of no real consequence." The payment of attorney fees provision in § 48-125 should not be given such a narrow interpretation.

Litigants should be on notice that in those cases in which one of the underlying reasons for the filing of the workers' compensation claim is to establish compensability for a delinquent medical bill, the assessment of an entire attorney fee is entirely appropriate and in keeping with the purpose of § 48-125. The circumstances of this particular case do not warrant such a result, and I, therefore, concur in the result reached by the majority.

McCORMACK, J., joins in this concurrence.