JUNIOR HERNANDEZ, APPELLANT, V. HAWKINS CONSTRUCTION COMPANY AND AETNA CASUALTY AND SURETY COMPANY, APPELLEES.

480 N.W.2d 424

Filed February 28, 1992.   No. S-91-415.

Michael D. Carper for appellant.

Theodore J. Stouffer and Kurt F. Tjaden, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Plaintiff, Junior Hernandez, has appealed the dismissal of his workers' compensation claim. The compensation court found that "[c]onsidering the evidence as a whole," Hernandez had "failed to prove preponderantly that he sustained an accident arising out of and in the course of his employment by the defendant, Hawkins Construction Company." The sole issue on appeal is whether the dismissal is supported by the record.

" 'Findings of fact made by the Nebraska Workers' Compensation Court . . . have the same force and effect as a jury verdict . . . . In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court . . . the evidence must be considered in the light most favorable to the successful party. . . . Factual determinations by the Workers' Compensation Court will not be set aside . . . unless such determinations are clearly erroneous. Regarding facts determined and findings made . . . in the Workers' Compensation Court, § 48-185 precludes the [appellate court's] substitution of its view of facts for that of the Workers' Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court. . . . As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony.' "

(Citations omitted.) *Phipps v. Milton G. Waldbaum & Co.*, 239 Neb. 700, 702-03, 477 N.W.2d 919, 920-21 (1991). As to procedural and evidentiary rulings of the compensation court, the appellate court may reverse or modify an order of the compensation court based on error in such rulings if the compensation court acted "without or in excess of its powers." See, Neb. Rev. Stat. § 48-185 (Reissue 1988); *Koch v. Frieden*

*Constr. Co.*, 228 Neb. 328, 422 N.W.2d 354 (1988).

Hernandez was hired by Hawkins Construction Company (Hawkins) on July 12, 1989. On that day, Hernandez was sent to work with a construction crew near Lexington. The crew was cutting wire from chunks of concrete being salvaged from reconstruction of Interstate 80. Hernandez testified on rehearing that he and another worker were told to ascend a pile of concrete and cut wire from the concrete near the top, using wirecutters.

Hernandez testified that he climbed to the top of the pile and began cutting. Hernandez claimed that at approximately 10 a.m., he felt the concrete under his feet move, and he fell approximately 10 feet, landing on his buttocks and back. He testified that he immediately felt sharp pain in his legs and lower back.

There was further testimony by Hernandez that he descended the pile immediately and informed the foreman of the accident. He then continued working until lunchtime, when he and the rest of the crew took a 1-hour break. Hernandez testified that after the break, he returned to work for approximately one-half hour. By this time, Hernandez claimed, the pain had intensified, so he again notified the foreman and was given a ride in a company truck back to Hawkins' main office. At the main office, a Hawkins secretary made arrangements for Hernandez to be taken to the Lexington hospital.

Hawkins offered the deposition testimony of Roland Anderson, Scott Panagiotis, and Christopher Feeney, three of Hernandez' coworkers on July 12, 1989. Anderson, who was working for Marcus Tree Service at the time of his deposition on January 8, 1991, was Hawkins' crew foreman on the day of the alleged injury, and Anderson testified that he assigned other workers—not Hernandez—to work on top of the pile of concrete. Anderson said Hernandez was assigned to work the small piles, one dumped truckload, which would be about 4 or 5 feet high. Anderson also testified that Hernandez left after telling Anderson "he [Hernandez] hurt his back." Specifically, Anderson's testimony was as follows:

Q If I could back you up a second there, did he say that

he had hurt his back or his back hurt?

A He said his back hurt. He didn't — He didn't tell me he'd gotten injured or he had fallen or anything, he just — he gave me the impression he was quitting, he was, you know, he didn't want to do it.

Q Okay, he never reported an injury to you that day?

A No.

Anderson also testified that Hernandez did not report an injury to him and that he did not send Hernandez to a doctor. Anderson did testify that Hernandez came back to the job a few days later, worked part of a day, and left again. It was at that time Anderson heard that Hernandez had previously hurt himself and that he had gone to a doctor. Anderson was told that day by one of the other workmen that Hernandez had fallen and hurt himself on July 12.

Panagiotis testified by way of deposition taken on December 20, 1990, at which time he was working for ADM Gooch Milling and attending the University of Nebraska at Lincoln, that he worked for Hawkins on July 12, 1989. He said that he and Hernandez had worked together on the "rock pile" which was about 40 or 50 feet high. The two of them ate their lunch together in Panagiotis' truck. They discussed the work, and both agreed that it was "back-breaking" work. Hernandez told Panagiotis that "he had hurt his back he told me at a meat packing plant in Hastings lifting some beef or something." Panagiotis testified that Hernandez did not tell him that Hernandez had fallen on the job.

Feeney also testified by deposition, which was taken on January 8, 1991, at which time he was 20 years old and unemployed. According to his testimony, he worked with Hernandez all the time that Hernandez was on the job on July 12, 1989, and they both worked at the bottom of the concrete piles. Feeney testified that he did not see Hernandez fall and that Hernandez told him "he [Hernandez] worked in a meat deal . . . and he said that's where, you know, he lifted weights till he hurt his back when he was lifting meat." Feeney went on to testify that Hernandez told him "he [Hernandez] used to lift weights but he doesn't any more because of his back."

Hernandez testified that upon arriving at the hospital in

Lexington, he was examined by a Dr. Miller. According to Hernandez, the doctor told him that he had "real bad torn muscles" in his back and that he was supposed to take a week off. According to Hernandez, he notified his employer of this fact.

There was further testimony by Hernandez that he returned to work a week later, worked a couple of hours, developed "bad pains" in his back, and could hardly walk. He said that the foreman, Anderson, gave him a ride back to the main office. He was then sent to the hospital again, where he was seen by a Dr. Kloch, who referred Hernandez to a Dr. Urban, an orthopedic physician in Kearney. Finally, Hernandez was referred to a Dr. Brestin, who first prescribed physical therapy and then operated on Hernandez in October 1989 because of a herniated disk.

The narrative reports and the deposition of Dr. Brestin indicate that he first saw Hernandez on September 6, 1989, as the result of a referral from his associate Dr. Urban. Dr. Brestin stated that he saw "him [Hernandez] for an injury which occurred on July 12, 1989. He was working on a pile of concrete, and he fell off the pile of concrete and landed on his back."

The testimony of Dr. Brestin tends to corroborate the story given by Hernandez, although, of course, it is simply a recitation of the story given him by Hernandez. However, missing from the record is any information from the hospital in Lexington; from Dr. Miller, who Hernandez said examined him on the day of the alleged accident; and from Dr. Kloch, who supposedly saw Hernandez a week after the alleged accident.

Hernandez emphasizes that Dr. Brestin testified that to a reasonable degree of medical certainty, Hernandez' medical condition occurred as a result of an alleged employment-related accident happening on or about July 12, 1989. Hernandez argues that this testimony is "undisputed and uncontroverted" and "is binding on the finder [of] fact" on the issue of causation. Regardless of the dubious legal foundation for this position, it is not otherwise supported by the record.

Dr. Brestin's medical opinion is entirely dependent on the accuracy of the evidence related to him establishing the alleged

accident. The most that can be concluded from Dr. Brestin's testimony is that if the accident occurred as related to him by Hernandez, he could say with a reasonable degree of medical certainty that it was the cause of Hernandez' medical condition.

The compensation court simply did not believe Hernandez' testimony, although the court did not say so in so many words. Where the evidence is in conflict, the appellate court will presume that controverted facts were decided in favor of the successful party. See *Central States Health & Life v. Miracle Hills Ltd.*, 235 Neb. 592, 456 N.W.2d 474 (1990). The appellate court "may not substitute its judgment for that of the compensation court but, rather, 'simply review[s] the decision for error.' " See *Kraft v. Paul Reed Constr. & Supply*, 239 Neb. 257, 263, 475 N.W.2d 513, 517 (1991) (quoting *Hare v. Watts Trucking Service*, 220 Neb. 403, 370 N.W.2d 143 (1985)).

The judgment of the compensation court is affirmed.

AFFIRMED.