RICHARD D. McGOWAN, APPELLANT, v. LOCKWOOD
CORPORATION AND THE HARTFORD, A CORPORATION, APPELLEES.

511 N.W.2d 118

Filed February 4, 1994.    No. S-92-634.

George P. Burke, of Burke & Wilson, for appellant.

Richard A. Douglas, of Nichols, Douglas and Kelly, P.C., for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

FAHRNBRUCH, J.

Richard D. McGowan, who was injured in an accident during the course of his employment with defendant Lockwood Corporation, claims that a majority of the three-judge panel of the Workers' Compensation Court failed to award him all of the workers' compensation benefits to which he is entitled. Defendant The Hartford was Lockwood's insurance carrier at the time McGowan was injured.

The Nebraska Court of Appeals affirmed the Workers' Compensation Court's ruling on the issues raised in McGowan's petition for further review. We granted further review on those issues.

We reverse on the issue of vocational rehabilitation benefits and affirm in all other respects.

## ASSIGNMENTS OF ERROR

Summarized and restated, McGowan, in his petition to this court for further review, assigns as error the Court of Appeals' affirmance of the Workers' Compensation Court's (1) sustainment of objections to his testimony and offers of proof regarding his employment contract and the hours he worked, (2) calculations of his average weekly wage, and (3) denial of his request for vocational rehabilitation.

As to McGowan's first restated assignment of error in this court, we note that the Workers' Compensation Court panel originally sustained objections to McGowan's testimony and offers of proof regarding his average weekly wage during the relevant period involved. However, before the hearing was concluded, the panel reversed its ruling and received into evidence McGowan's testimony on the subject. Thus, McGowan's first summarized and restated assignment of error in this court requires no further discussion because it has no merit.

## STANDARD OF REVIEW

Findings of fact made by the Nebraska Workers' Compensation Court after rehearing have the same force and

effect as a jury verdict in a civil case and will not be set aside on appeal unless clearly wrong. *Hernandez v. Hawkins Constr. Co.*, 240 Neb. 129, 480 N.W.2d 424 (1992); *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991).

A judgment, order, or award of the compensation court may be modified, reversed, or set aside if the record does not contain sufficient competent evidence to warrant the making of the order, judgment, or award. *Wiese v. Becton-Dickinson Co.*, 239 Neb. 1033, 480 N.W.2d 156 (1992). In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party. *Hernandez, supra*. The proper construction and application of statutory terms is a question of law. *Yager, supra*. An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. See, *id.*; *Elrod v. Prairie Valley*, 214 Neb. 697, 335 N.W.2d 317 (1983).

## FACTS

McGowan was hired by Lockwood in January 1990 and began working as a machinist in Lockwood's fabrication department. On April 4, during the course of his employment, McGowan turned to pick up a piece of iron and injured his right knee. He underwent arthroscopic knee surgery April 6, and returned to work April 24 or 25. On August 21, McGowan suffered a recurrence of his right-knee injury during the course of his employment while working with a 5- by 12-foot sheet of metal.

Because of the injury to his right knee, McGowan could not return to his previous duties. In mid-December 1990, Lockwood offered McGowan light-duty work. On December 17, McGowan was assigned the task of measuring certain distances in Lockwood's fabrication department. The personnel director expected that assignment to take 3 or 4 days. After McGowan finished the work in $1\frac{1}{2}$ to 2 hours, Lockwood's personnel director assigned McGowan to work as a clerk in the company's toolcrib. He worked there 4 hours on the afternoon of December 17, 7 hours on December 18, and 5 hours on December 19. McGowan was paid $5 per hour for the

measuring and toolcrib work. The evidence is in conflict as to whether the toolcrib work would be permanent.

As a Lockwood machinist, McGowan initially was paid $6 per hour plus a 25-cents-per-hour shift differential. Prior to the accident on April 4, McGowan had received a wage increase to $6.33 per hour. He continued to receive the 25-cents-per-hour shift differential. At the time of the recurrence of his knee injury on August 21, McGowan was earning $6.61 per hour plus a 25-cents-per-hour shift differential.

McGowan last worked for Lockwood on December 19, 1990. He left his toolcrib work early that day for an appointment with a counselor from the division of vocational rehabilitation services. This absence from work was approved by his supervisor.

As a result of McGowan's consultations with the vocational rehabilitation counselor, a plan was developed by which McGowan would study farm or ranch management at a community college, with the ultimate goal of becoming a feedlot or ranch manager. With financial aid from the division of vocational rehabilitation services, McGowan began attending Western Nebraska Community College in Scottsbluff in January 1991. He was in his third semester at the time of his hearing before the three-judge compensation court panel in March 1992. At the time of the hearing, McGowan, who was then 45 years old, was wearing a right knee brace which he had worn since September 1990.

About a month after McGowan started school, he began working part time at Banner Feed Company in a feedlot. He worked at this part-time job until the first part of June 1991, and earned $5 per hour. His job included riding a horse through the cattle pens and helping process cattle. McGowan testified that he left that job "because they were out of cattle down there. They didn't have any more part-time work."

In June 1991, McGowan worked for about 10 days swathing alfalfa for a local farmer. He worked 2 to 5 hours per day and was paid $6.50 per hour. Later, he helped his wife and two children take care of 63 cows and 8 horses that he and his wife purchased in the fall of 1991 with borrowed money.

After completion of a single-judge hearing, the

compensation court found that McGowan had suffered a 44-percent permanent disability of his right leg and that he was entitled to vocational rehabilitation services as well as compensation and other benefits. Following a rehearing, a majority of a three-judge compensation panel agreed with the single compensation judge's calculation of McGowan's average weekly wage of $302.24. Although awarding McGowan other benefits, the panel majority refused to award McGowan vocational rehabilitation services, stating that he "failed to prove that he is unable to return to work for which he has had prior training or experience . . . ." The panel majority found that McGowan could have continued as a toolcrib clerk and that he was working as a cowboy as well.

On appeal, the Court of Appeals affirmed the panel majority's ruling on all issues raised in McGowan's petition for further review. The Court of Appeals found sufficient evidence to support the panel majority's computations of McGowan's weekly wages. In addition, the Court of Appeals found that the toolcrib clerk position provided a salary comparable to McGowan's previous salary and that the clerk position required no vocational rehabilitation.

## ANALYSIS

In regard to his second and third summarized and restated assignments of error in this court, McGowan argues that on rehearing, the panel majority of the Workers' Compensation Court and the Court of Appeals in its review failed to apply the correct statutory standards in determining his average weekly wage and in determining whether he is entitled to vocational rehabilitation.

### WAGE CALCULATIONS

The record in this case reflects conflicting evidence relating to McGowan's average weekly wage for the relevant period. The Workers' Compensation Court panel majority found it to be $302.24. That finding was affirmed by the Court of Appeals. Apparently based upon McGowan's testimony and evidence adduced by him, the dissenting workers' compensation judge would have set McGowan's average weekly wage at $340.20.

In part, McGowan argues that the average weekly wage calculation was erroneous because it was based on his wages prior to April 4, rather than prior to August 21. Between April 4 and August 21, McGowan received an increase in his hourly wage.

In the single compensation judge's order, it was found that McGowan "suffered an accident on April 4, 1990[,] after which he had arthroscopic surgery and suffered but a recurrence of the same injury on August 21, 1990." The panel majority on rehearing similarly found that McGowan suffered but one accident. This finding of one accident with a recurrence of the injury was not assigned as error in McGowan's petition for further review in this court, and it, therefore, will not be reviewed by this court. To be considered by an appellate court, an error must be assigned and discussed in the brief of the one claiming that prejudicial error has occurred. *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993).

Given that the compensation court panel majority found that McGowan suffered one compensable accident on April 4, with a recurrence of the same injury on August 21, it was not clearly wrong for the panel majority to compute McGowan's wages using his earnings as of April 4. All calculations to be made under the provisions of Neb. Rev. Stat. § 48-121 (Reissue 1988), and amendments thereto, have reference to wages, percentages, and results *as of the time of injury. Osteen v. A. C. and S., Inc.*, 209 Neb. 282, 307 N.W.2d 514 (1981). Neb. Rev. Stat. § 48-126 (Reissue 1988) defines the term "wages" as used in the Workers' Compensation Act to mean "the money rate at which the service rendered is recompensed *under the contract of hiring in force at the time of the accident.*" (Emphasis supplied.)

Although we have been unable to find where this court has addressed the precise issue involved here, we have found that this court has considered other issues related to the recurrence of an injury. In one such case, where the worker suffered a recurrence of a compensable injury after his employer had changed insurance carriers, this court stated that if a worker's "second injury is but a recurrence of the original injury, compensation therefor must be paid by the employer and insurance carrier *at the time of the first injury.*" (Emphasis

supplied.) *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 780, 408 N.W.2d 280, 286 (1987).

To support his contention that the Workers' Compensation Court panel majority erred in its calculation of his average weekly wage, McGowan basically relies upon his own testimony and evidence that he adduced as to the number of hours he worked. In his petition for further review, McGowan states that "[t]he defendants offered no contrary evidence." That statement overlooks the receipt into evidence of McGowan's employee ledger sheet. Kept by Lockwood as part of its records, the ledger sheet reflects the number of hours McGowan worked, his rate of pay, and amounts he was paid for his work. This evidence produced by Lockwood was in conflict with McGowan's testimony and evidence. Thus, there was a conflict in the evidence as to the underlying facts to be used in determining McGowan's average weekly wage. The evidence adduced from the records of McGowan's employer support the workers' compensation panel majority's determination of McGowan's average weekly wage. The evidence supporting a finding of fact must be considered in the light most favorable to the successful party. See *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991). In regard to McGowan's average weekly wage, it is obvious that the majority of the workers' compensation panel accepted Lockwood's evidence rather than the evidence produced by McGowan. Under our standard of review, it cannot be said that the panel majority's finding as to McGowan's average weekly wage was clearly wrong. McGowan's assignment of error in regard to his average weekly wage is without merit.

McGowan's Right to Vocational Rehabilitation

Neb. Rev. Stat. § 48-162.01 (Reissue 1988) sets forth the situations in which the compensation court can award vocational rehabilitation benefits. Subsection (3) of that statute, at all times relevant to this action, stated in part:

*When as a result of the injury an employee is unable to perform work for which he or she has previous training or experience,* he or she shall be entitled to such vocational rehabilitation services, including retraining and job

placement, *as may be reasonably necessary to restore him or her to suitable employment.*

(Emphasis supplied.)

Furthermore, subsection (6) of § 48-162.01 stated:

Whenever the Nebraska Workers' Compensation Court or judge thereof determines that there is a reasonable probability that with appropriate training, rehabilitation, or education a person who is entitled to compensation for total or partial disability which is or is likely to be permanent may be rehabilitated *to the extent that he or she . . . can . . . increase his or her earning capacity . . .* if the injured employee without reasonable cause refuses to undertake the rehabilitation, training, or educational program . . . the compensation court or judge thereof may suspend, reduce, or limit the compensation otherwise payable under the Nebraska Workers' Compensation Act.

(Emphasis supplied.)

In *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 549, 288 N.W.2d 482, 486 (1980), this court held that when read together, subsections (3) and (6) of § 48-162.01 meant that the "statute authorizes vocational rehabilitation training not only under the circumstances outlined in subsection (3), but also where the Workmen's Compensation Court finds that the employee has suffered a reduction in earning power on account of a compensable injury and also finds that vocational rehabilitation will increase that earning capacity." Accord, *Bindrum v. Foote & Davies*, 235 Neb. 903, 457 N.W.2d 828 (1990); *Thom v. Lutheran Medical Center*, 226 Neb. 737, 414 N.W.2d 810 (1987).

We are aware that subsection (6) of § 48-162.01 has recently been amended and no longer includes the language emphasized above. The amendments to § 48-162.01 became effective on January 1, 1994. The statute, as previously quoted, existed at the time of McGowan's accident, at the time of his rehearing, and at the time of the compensation court's award. Therefore, that language governs McGowan's claim for vocational rehabilitation. Cf. *Allen v. IBP, Inc.*, 219 Neb. 424, 363 N.W.2d 520 (1985).

We now turn to a review of the compensation court's

determination of whether McGowan is entitled to vocational rehabilitation. The compensation court panel majority found that McGowan failed to prove he could not perform work for which he had previous training or experience. Prior to his accident, McGowan had a high school education and had attended 1 year of college. Throughout his life, McGowan worked primarily as a physical laborer, holding jobs as a farm laborer, construction worker, janitor/custodian, and machinist, as well as other labor-intensive positions.

In determining that the workers' compensation panel majority was correct in denying McGowan vocational rehabilitation, the Court of Appeals recited, inter alia, (1) the various jobs McGowan undertook before and after his injury; (2) that McGowan performed well as a toolcrib clerk and apparently could have continued to perform such work without vocational rehabilitation; and (3) McGowan's ability to work at Banner Feed Company and to help care for cattle and horses owned by him and his wife, all of which indicated that McGowan would require no additional training to perform those types of work.

The fact that McGowan could have worked as a toolcrib clerk for $5 per hour or that he had held a job at Banner Feed Company for $5 per hour does not automatically disqualify him from receiving vocational rehabilitation benefits.

In *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991), this court stated that a finding that a workers' compensation claimant currently maintains a minimum-wage job is not, in and of itself, sufficient to support a denial of vocational rehabilitation benefits. In *Yager*, the court remanded the cause for further proceedings on the issue of whether Yager was entitled to vocational rehabilitation. Yager was earning $220 a week at the time of his injury, and had accepted a minimum-wage job paying $104 a week after his injury. The court stated that to ignore the proportionately large difference between Yager's wages before and after the injury would be to ignore the statutory goal of returning injured workers "to suitable, that is, comparable, employment." *Yager*, 236 Neb. at 897, 464 N.W.2d at 341. The court held that "accepting a job paying minimum wage does not automatically

'restore' a claimant to 'suitable' or 'gainful' employment pursuant to § 48-162.01, where the claimant's previous employment was at a significantly higher wage." *Id*. at 896, 464 N.W.2d at 340.

The reasoning in *Yager* is consistent with the governing language of subsection (6) of § 48-162.01 (Reissue 1988). At the relevant time involved here, that section authorized the compensation court to award McGowan vocational rehabilitation if it found that (1) McGowan suffered a reduction in earning power and (2) vocational rehabilitation would increase his earning capacity.

A determination as to whether an injured worker has had a loss of earning power and whether there is a reasonable probability that vocational rehabilitation services would reduce the amount of earning power lost by an injured worker, if any, are questions of fact to be determined by the Workers' Compensation Court. See *Thom v. Lutheran Medical Center*, 226 Neb. 737, 414 N.W.2d 810 (1987). The compensation court in McGowan's case failed to make findings either way, although the record contains evidence relevant to these issues.

The workers' compensation panel majority's findings that McGowan's average weekly wage prior to his accident was $302.24 and that his anticipated weekly salary as a toolcrib clerk would have been $200 are relevant to whether McGowan suffered a reduction in earning power. The workers' compensation panel made no finding of fact in this regard. However, the Court of Appeals held that the two salaries were comparable. A change in salary from $302.24 to $200 per week constitutes an almost 34-percent reduction in weekly wages. The Court of Appeals' holding that the two salaries are comparable is clearly wrong as a matter of law.

As to the probability that vocational rehabilitation would reduce McGowan's loss of earning power, the evidence shows that McGowan's vocational rehabilitation counselor thought the proposed rehabilitation plan would indeed help McGowan secure employment at a wage comparable to what he had been earning before his injury. In a letter admitted into evidence, McGowan's vocational rehabilitation counselor stated:

Based upon the description of the duties of Mr.

McGowan's position, I felt Mr. McGowan would not be able to perform the work for which he was employed at Lockwood. Furthermore, I felt his disability and associated limitations would result in his being either unemployed or, at best, underemployed — both in task performance and earnings. . . .

. . . .

The goal [of becoming a feedlot or ranch manager] was appropriate since it utilized Mr. McGowan's personal experiences as well as met his interests. Furthermore, attainment of that goal would help ensure Mr. McGowan would be better able to support his family at wage level fairly consistent to that received at the time of his injury.

There was additional evidence and testimony by the vocational rehabilitation counselor from which the workers' compensation panel could have and should have made a finding of fact as to whether vocational rehabilitation would decrease McGowan's loss of earning capacity.

## CONCLUSION

In regard to the issue of whether McGowan is entitled to vocational rehabilitation benefits, we reverse the decision of the Court of Appeals upholding the denial of those benefits by the Workers' Compensation Court, and remand the cause to the Court of Appeals with direction to remand the cause to the Workers' Compensation Court with direction to reconsider the issue of vocational rehabilitation benefits in accord with this opinion. In all other respects, the decision of the Court of Appeals is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.