JOHN M. FORDHAM, APPELLEE, V. WEST LUMBER COMPANY,
APPELLANT.

513 N.W.2d 52

Filed March 15, 1994.   No. A-93-657.

Walter E. Zink II and Thomas B. Wood, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Bradley J. Montag, of Moyer, Moyer, Egley, Fullner & Warnemunde, for appellee.

CONNOLLY, HANNON, and IRWIN, Judges.

IRWIN, Judge.

This is an appeal by West Lumber Company, the employer, from an order of the Workers' Compensation Court awarding John M. Fordham $255 per week in permanent total disability benefits for an injury sustained while working for West Lumber. For the reasons recited below, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

The evidence must be viewed in a light most favorable to Fordham, as the court is required to do. *Cannia v. Douglas Cty.*, 240 Neb. 382, 481 N.W.2d 917 (1992). On April 20, 1990, Fordham was working for West Lumber cutting plywood "bunks." A bunk is a bundle of 70 plywood sheets. Fordham was required to bend over and reach with his hands to the level of his ankles, pick up a sheet of plywood, turn his body, and push the sheet through a saw. The amount of time it took to cut a bunk depended on how many pieces each sheet had to be cut into. Fordham was paid $20 for cutting a bunk.

On Friday, April 20, Fordham was bending over and twisting when he felt a sharp pain in his back which was so severe it caused him to lose his breath and fall across the pile of wood. He did not report the accident to his supervisor until the following Monday, because he had hoped to be able to return Saturday, April 21, and finish cutting his order. The first treatment medical report is in the record and lists the accident date as April 20, 1990. On Monday, April 23, Fordham was seen by Dr. Anthony Kusek, who treated him conservatively for a lumbosacral strain with analgesics, muscle relaxants, and physical therapy. Fordham did not recover, and Dr. Kusek referred him to Dr. Gordon Bainbridge, an orthopedic surgeon. Dr. Bainbridge diagnosed Fordham as having bilateral spondylolysis and a symptomatic grade I spondylolisthesis with

possible L5 nerve root entrapment. A spondylolysis is a defect of a vertebra, and a spondylolisthesis is when one vertebra slips forward on another and the vertebral column is no longer aligned. Dorland's Illustrated Medical Dictionary 1567 (27th ed. 1988). Fordham continued to be treated conservatively, with minimal improvement in his symptoms. Dr. Bainbridge opined that Fordham had a 20-percent physical impairment, that he would not be able to return to the type of work he was doing at West Lumber, and that he may require surgery in the future. The trial judge determined that Fordham was permanently totally disabled and awarded him $90 per week for temporary total disability until September 28, 1992, and thereafter $255 per week for permanent total disability benefits. See *Pearson v. Lincoln Telephone Co., ante* p. 703, 513 N.W.2d 361 (1994) (addressing the impact of the amended Nebraska Workers' Compensation Act on the scope of appellate review).

West Lumber appealed to a review panel. See *Pearson v. Lincoln Telephone Co., supra*. A majority affirmed the trial judge's award without opinion and awarded Fordham attorney fees. On review, one judge dissented, stating that the trial judge's findings that a specific accident occurred on April 20, 1990, and that Fordham's injury and disability resulted from the accident were not supported "by substantial evidence, and thus are clearly wrong." West Lumber subsequently perfected this appeal and asserts seven assignments of error.

Assignment of error No. 5 is not discussed in the brief. To be considered by this court, an error must be assigned and discussed in the brief of one claiming that prejudicial error has occurred. *Carlson v. Zellaha,* 240 Neb. 432, 482 N.W.2d 281 (1992); *State v. Melton,* 239 Neb. 576, 477 N.W.2d 154 (1991); *In re Interest of B.M.,* 239 Neb. 292, 475 N.W.2d 909 (1991); *Chambers-Dobson, Inc. v. Squier,* 238 Neb. 748, 472 N.W.2d 391 (1991).

Assignments of error Nos. 1, 2, 3, and 4 may be distilled into an assertion that the court erred in finding that Fordham sustained an injury to his back as a result of a specific accident arising out of and in the course of his employment. Assignment of error No. 6 is a challenge to whether or not the evidence supports the trial judge's finding that Fordham is permanently

disabled. Assignment of error No. 7 deals with the calculation of the permanent disability benefits.

## SCOPE OF REVIEW

■ " ' "Findings of fact made by the Nebraska Workers' Compensation Court . . . have the same force and effect as a jury verdict in a civil case. . . . In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court . . . the evidence must be considered in the light most favorable to the successful party. . . . Factual determinations by the Workers' Compensation Court will not be set aside on appeal unless such determinations are clearly erroneous. Regarding facts determined and findings made . . . in the Workers' Compensation Court, § 48-185 precludes [an appellate court's] substitution of its view of facts for that of the Workers' Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court. . . . As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony." ' "

*Cannia v. Douglas Cty.*, 240 Neb. 382, 383-84, 481 N.W.2d 917, 919 (1992) (quoting *Schmid v. Nebraska Intergov. Risk Mgt. Assn.*, 239 Neb. 412, 476 N.W.2d 243 (1991), quoting *Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 472 N.W.2d 727 (1991)). See, also, *Bernhardt v. County of Scotts Bluff*, 240 Neb. 423, 482 N.W.2d 262 (1992). This court recognizes that the Nebraska Workers' Compensation Act has been amended and that a full panel of the compensation court now sits as an appellate court. Neb. Rev. Stat. § 48-179 (Cum. Supp. 1992). See, also, *Pearson v. Lincoln Telephone Co., supra*. However, in an appeal from a review where the panel affirmed the order of the trial judge, this court may still modify, reverse, or set aside the order of the review panel if the panel was clearly wrong in failing to find that (1) the trial judge acted without or in excess of his or her powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order,

judgment, or award; or (4) the findings of fact by the trial judge do not support the order or award. See Neb. Rev. Stat. § 48-185 (Cum. Supp. 1992). See, also, *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994).

## ANALYSIS

■ Whether an accident arises out of and in the course of employment is a question of fact. *Bituminous Casualty Corp. v. Deyle*, 225 Neb. 82, 402 N.W.2d 859 (1987). As noted above, findings of fact made by the trial judge have the same force and effect as a jury verdict. Factual determinations by the trial judge will not be set aside unless clearly erroneous. *Hernandez v. Hawkins Constr. Co.*, 240 Neb. 129, 480 N.W.2d 424 (1992).

### WHEN AND HOW INJURED

West Lumber asserts in its brief that Fordham failed to produce sufficient evidence to support a finding that he sustained an injury on April 20, 1990, because the medical evidence does not indicate the date of the accident or what Fordham was doing when he injured his back.

A review of the record indicates that Fordham testified that the injury occurred on Friday, April 20. He informed his supervisor on the following Monday. The first treatment medical report, prepared by Dr. Bainbridge on May 11, contains the April 20 date as the date of the injury. The report states that the injury occurred while Fordham was "[b]ending over to run . . . plywood through [a] saw." Physical therapy notes dated April 24 state that Fordham injured his back "last Friday when he was bending over and doing rotational type motions, working with some plywood." According to the calendar, April 24, 1990, was a Tuesday, and the prior Friday was April 20. Dr. Kusek's followup note dated April 26 states that Fordham was returning to "[r]echeck back injury at work at the lumbar [sic] yard." Dr. Bainbridge's first exam notes, dated May 2, state that Fordham had a sudden onset of low-back pain radiating into the left leg while he was working at West Lumber and that he had been "sore and uncomfortable for the last 2 weeks." Viewed as a whole, this evidence is sufficient to support a finding that while Fordham was cutting plywood at work on April 20, he injured his back. The finding

of the trial judge that the accident arose out of and in the course of Fordham's employment was not clearly erroneous.

PREEXISTING CONDITION

■ West Lumber further asserts that Fordham's disability was the result of a normal progression of his preexisting condition, the spondylolisthesis, and not the work-related injury, and that the trial judge erred in failing to make this finding. It cites *Sellens v. Allen Products Co., Inc.*, 206 Neb. 506, 293 N.W.2d 415 (1980) (holding that a disability which arises from the normal progression of a preexisting condition is not compensable) as authority. Cf. *Engel v. Nebraska Methodist Hospital*, 209 Neb. 878, 312 N.W.2d 281 (1981) (holding that an employee with a preexisting condition need only prove that the accident aggravated the condition and resulted in the disability; the employee does not have to prove that the condition will never, sometime in the future, through natural progression, result in a disability). See, also, *Miller v. Goodyear Tire & Rubber Co.*, 239 Neb. 1014, 480 N.W.2d 162 (1992).

In support of its contention, West Lumber asserts that the evidence in the record reveals that Fordham's onset of debilitating back pain actually occurred 2 years earlier and that his problem, the spondylolisthesis, had been diagnosed in 1987. West Lumber refers this court to Dr. G.D. Smith's medical reports as proof that Fordham had been complaining of this specific debilitating condition for 2 years prior to the April 20, 1990, injury. While West Lumber's legal theory may be correct, it misinterprets the evidence in the record.

A review of the doctor's notes reveals that Fordham presented to Dr. Smith sometime in 1986 with complaints of low-back pain and muscle spasm, but had "full range of motion with leg elevation." He was treated conservatively. Later that year, on October 22, Fordham presented for a disability exam update; this disability arose from prior shoulder and knee injuries which occurred in 1981 on an oil rig. Fordham had no new complaints, only bilateral knee "arthridities [sic] with internal derangement." On October 28, 1986, he presented with a fever, stomach pain, and back pain and was treated for a

urinary tract infection. On December 18, 1986, Fordham presented with complaints of all of his joints hurting, including his ankles, knees, elbows, wrists, and back. His back was noted to have tight paraspinous muscles, the muscles on either side of the spine, "even up into the cervical area." He was treated conservatively. Fordham presented again sometime in 1987 for another disability exam. At that time, he was able to bend over and come within 6 inches of touching the floor, but his shoulder and knee examinations revealed increased pain and decreased range of motion. On February 27, 1987, Fordham presented for another disability exam. At that time, he was complaining of marked pain in all extremities, "especially of the [ankle and] knee area," and stomach pain. He was treated conservatively for ulcer disease, chronic knee pain, and lumbar back strain. Later in 1987, Fordham presented with neck pain. A computerized tomography scan was ordered, which indicated a bulging disk. A disk is like a pillow between the bony vertebrae. Fordham was referred to Dr. John Fox, presumably to evaluate the cervical disk problem.

The reasonable inference which arises from a close review of the exams and assessments on the above dates is that Dr. Smith was primarily treating Fordham for his knee and shoulder disabilities and that the back pain was more incidental than primary. There is no support for the assertion that Fordham was being treated for severe debilitating back pain on a monthly or more intensive basis, which is how his post-April 20, 1990, injury medical reports progress.

Dr. Fox, the neurosurgeon Dr. Smith referred Fordham to in November 1987, noted that Fordham had a spondylolisthesis, "but it is of such small amount that, in my opinion, surgery is not warranted." Furthermore, Fox's physical exam of Fordham reveals that Fordham was able to tolerate straight leg raising to 90 degrees "without any difficulty." Straight leg raising is when the patient lies flat on his or her back and the examiner raises the patient's foot off of the table as high as the patient can tolerate. This is consistent with Dr. Smith's exam where Fordham could bend and reach his hands to within 6 inches of the floor. Also, Dr. Fox's sensory exam of Fordham was normal. Dr. Fox further stated that he was "not convinced [that

a back brace] is warranted at this point." This picture is in contrast to Fordham's post-April 20, 1990, injury physical exams by Dr. Bainbridge and a physical therapist where Fordham could not bend forward at all, his straight leg raising on the left was positive at 10 degrees, Dr. Bainbridge detected some loss of sensation in the L5 nerve root area, and the doctor immediately prescribed a back corset.

Dr. Fox diagnosed Fordham as having "lowback strain." In contrast, Dr. Bainbridge diagnosed Fordham after the April 20 injury as having a symptomatic spondylolisthesis and possible nerve root entrapment.

West Lumber again misinterprets the evidence in its statement in its brief that Fordham agreed that he returned to work despite his debilitating condition "in 1988 because he 'just had to do it.' " Brief for appellant at 11. In fact, the following colloquy occurred during cross-examination of Fordham:

> Q You went back to work after the oil rig accident because you were cut off from disability and you just had to, didn't you?
>
> A The reason I went back to work is because after these treatments — after these visits with Dr. Smith and Dr. Fox, I received medication from Dr. Smith that relieved me of my symptoms . . . . [T]his made me feel like a new person. I had control of my body, I felt great. I was happy about it and I went back to work.

The distinction between episodic low-back pain and a symptomatic spondylolisthesis was obviously recognized by the trial judge. The evidence indicates that Fordham had episodic low-back pain prior to the accident. There is no medical evidence that this episodic pain was caused by his preexisting spondylolisthesis. There is no medical evidence regarding the "normal progression" of a spondylolisthesis. There is medical evidence that the spondylolisthesis remained a grade I after the April 20, 1990, injury, but that because of the injury, Fordham now has a debilitating symptomatic spondylolisthesis with nerve root impingement.

Determination of causation is normally a question for the trier of fact. *Miller v. Goodyear Tire & Rubber Co.*, 239 Neb. 1014, 480 N.W.2d 162 (1992). As noted above, determinations

of fact by the trial judge will not be set aside unless clearly erroneous. *Hernandez v. Hawkins Constr. Co.*, 240 Neb. 129, 480 N.W.2d 424 (1992). It was not clearly erroneous for the trial judge to find that it was the injury, and not a progression of the spondylolisthesis, which caused Fordham to be disabled.

### INTERVENING INJURY

West Lumber also suggests that a motor vehicle accident Fordham was involved in after the April 20 work accident was the cause of Fordham's disability, although it cites no authority concerning intervening causes. It may be using this argument only as support for its above assertion that Dr. Bainbridge did not have sufficient " 'definite and certain' " medical testimony to support the causation link. Brief for appellant at 16. Nevertheless, in the interest of completeness, the issue will be addressed here.

Fordham was a passenger in a pickup which was involved in an accident on November 21, 1990. Fordham was thrown from the vehicle and sustained a serious fracture of the third cervical vertebra. He was placed in a "Roto-Rest" bed with "Gardner-Wells" tongs in traction. Fordham underwent surgery which included fusing his third cervical vertebra. He was discharged on November 26.

Fordham was examined by Dr. Bainbridge and by one of his associates more than a year after the motor vehicle accident. Dr. Bainbridge testified by deposition that he could not say with any degree of medical certainty whether Fordham's persistent back pain after the motor vehicle accident was caused by the motor vehicle accident or some other activity. However, he subsequently stated in his deposition that he certainly believed that Fordham's onset of back pain occurred because of the April 20 injury. The medical records indicate that Fordham still had complaints of pain in his lower back after the motor vehicle accident; however, his exam results were not substantially different from those just prior to the motor vehicle accident. Dr. Bainbridge's inability to distinguish whether Fordham's back pain persisted after the motor vehicle accident because of the motor vehicle accident or because it would have anyway is too meatless a bone to pick. The fact that the pre-motor-

vehicle-accident and post-motor-vehicle-accident exams are essentially the same supports a finding that Fordham's disability was not significantly affected by the intervening motor vehicle accident. The trial judge's refusal to find an intervening cause is not in error.

## PERMANENT DISABILITY

West Lumber also asserts that the evidence does not support a finding that Fordham is permanently and totally disabled. In support of its position, West Lumber points out that Fordham has, since the accident, shingled roofs; done yardwork; and raised pigs, which required him to load and unload 5 to 15 80-pound feed sacks. West Lumber also claims that Fordham's job search, which included applying for jobs as a carpenter for a freezer door manufacturer, postal employee, and house inspector, obviously indicates that Fordham has "tacitly admitted that he is not permanently and totally disabled." Brief for appellant at 28.

The record reflects that Fordham hired people to shingle his roof and that he went up to the roof to show them how to do it, was up about an hour, and then had to quit. He also tried to find help to haul and unload feed for 15 pigs he had to feed after the April 20 accident. He admitted that two or three times after the April 20 accident he could not find anyone to do the job, so he unloaded the feed himself and then recuperated from the resulting pain. At the time of the hearing, Fordham had three pigs and was using the pigs to teach his two children about the work and profit associated with raising pigs. We note that an employee need not be completely incapacitated to be disabled for compensation purposes; he or she need only be so handicapped that he or she cannot be employed in any well-known branch of the labor field. See *Schlup v. Auburn Needleworks,* 239 Neb. 854, 479 N.W.2d 440 (1992) (holding that the employee's injury, combined with her lack of education, resulted in her being categorized as an odd-lot worker). See, also, *McGowan v. Lockwood Corp.,* 245 Neb. 138, 511 N.W.2d 118 (1994). None of Fordham's adventures contradict the trial judge's finding that Fordham is totally disabled.

There is no evidence in the record regarding the level of activity required to perform the jobs Fordham applied for in his job search. Notably, Fordham's search for employment was unsuccessful.

Dr. Bainbridge's final exam on July 28, 1992, reveals, inter alia, that Fordham could only bend to within 2½ to 3 feet from the floor, but in a preinjury exam he could bend to within 6 inches. In July 1992, Fordham's straight leg raising was uncomfortable at 30 to 40 degrees, but preinjury his leg could be pushed to 90 degrees without problem. Postinjury, he "appears to have bilateral L5 nerve root impingement," but preinjury Fordham had no sensory problems noted by physicians. Dr. Bainbridge opined that Fordham had a 20-percent physical impairment and was 100-percent totally disabled. This undisputed evidence supports the trial judge's finding that Fordham is totally and permanently disabled.

### AVERAGE WEEKLY WAGE

West Lumber lastly assigns as error the court's calculations determining Fordham's permanent total disability benefits. The court found that Fordham's weekly wage at the time of the injury was $400. West Lumber asserts this is error because the parties had stipulated to the fact that Fordham's weekly wage was $130.

There is no law in Nebraska which requires a court to accept a stipulation. See *In re Estate of Mithofer*, 243 Neb. 722, 502 N.W.2d 454 (1993) (stating that courts will enforce stipulations unless some good cause is shown for declining to do so).

The trial judge specifically found:

The parties stipulated that the plaintiff's average weekly wage was $135.00 [sic]. However, the evidence is that plaintiff worked but part time. The Court concludes the stipulation was not meant to be applicable to the calculation of permanent disability or, if it was, it was made improvidently and, in the interest of justice and fairness, must be ignored. The plaintiff testified that he was paid $20.00 per bunk of plywood and that while the time taken per bunk varied it worked out to $10.00 per hour. Therefore, the Court has concluded that the average

weekly wage for the purpose of calculating permanent partial [sic] disability, is $400.00 ($10.00 x 40).

During the hearing, there apparently was some confusion concerning the calculation of Fordham's weekly wage. The following exchange is noteworthy:

THE COURT: See what I am trying to figure out here is what the compensation rate should be for the purposes of permanent partial [sic] disability and if somebody works part time you calculate it for an hourly wage, then you calculate on the basis of [a] forty hour week. . . .

[Fordham's counsel]: Your Honor, I think the compensation rate should be on the basis of the average weekly wage and I believe that would be on I guess a part time basis. His average weekly wage came out to a hundred thirty-five a week that he received.

THE COURT: I know. You know that people who are employed part time their compensation for permanent disability is calculated on the basis of full time. . . .

A short recess was taken, and when the hearing resumed, Fordham's counsel proceeded to elicit testimony from Fordham that he had earned approximately $7,000 working for West Lumber during the previous year and that his average weekly wage was $135 per week.

Neb. Rev. Stat. § 48-126 (Reissue 1988) defines wages to mean "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident." Section 48-126 further states that in

continuous employments, if immediately prior to the accident the rate of wages was fixed by the day or hour or by the output of the employee, his or her weekly wages shall be taken to be his or her average weekly income for the period of time ordinarily constituting his or her week's work, and using as the basis of calculation his or her earnings *during as much of the preceding six months* as he or she worked for the same employer . . . .

(Emphasis supplied.) In *Canas v. Maryland Cas. Co.*, 236 Neb. 164, 459 N.W.2d 533 (1990), the injured employee earned $5.25 per hour. The employer testified that the employee was not guaranteed a set number of hours per week, but was paid only

for the number of hours he actually worked. The employer testified that the employee ordinarily worked 45 to 50 hours per week. Further evidence in the record revealed that during the 26 weeks before the accident, the employee worked 44.03 to 50.87 hours per week with seven exceptions, which were due to vacation time. The employer wanted to include the hours from these vacation weeks into the total, so as to decrease the employee's average weekly wage. The compensation court declined to do so. The employer appealed. The Supreme Court held that the compensation court was correct in refusing to include those 7 weeks, because § 48-126 requires that the average weekly wage must be for the period of time which *ordinarily* constituted the employee's workweek. To include those vacation weeks would lead to a "harsh and oppressive" result. *Canas v. Maryland Cas. Co.*, 236 Neb. at 168, 459 N.W.2d at 537.

In the case at bar, Fordham testified that he had originally been paid by the hour, but at some unknown point in time he became an output worker. The following colloquy is relevant.

Q Mr. Fordham, what were the six months preceding your injury at West Lumber? What — how many hours per week on average were you working at West Lumber?

A I don't recall.

Q Over the period of the year when you worked at West Lumber for a complete year you earned approximately seven thousand dollars working for them, is that correct?

A I believe that's correct.

Q Do you agree that your average weekly wage while employed at West Lumber was a hundred thirty-five dollars per week?

A Well, if you break that down I suppose that's probably pretty close.

Fordham asserts in his brief that Neb. Rev. Stat. § 48-121(4) (Reissue 1988) requires the trial judge to determine his weekly wage as though he worked full time.

Section 48-121 provides the schedule of compensation for the different types of disabilities. Subsection (1) provides that for total disability, the employee shall receive 66²/₃ percent of wages received at the time of injury. Subsection (2) provides

that for partial disability, the employee receives 66²/₃ percent of the difference between the wages received at the time of injury and the "earning power" of the employee thereafter. Subsection (3) provides for member disability benefits. Under subsection (4), if preinjury wages were fixed by (1) a *daily* rate, the weekly wages "shall be taken to be computed upon the basis of a work week of a minimum of five days"; (2) an *hourly* rate, the computation is "upon the basis of a work week of a minimum of forty hours"; or (3) an *output* rate, the computation is "upon the basis of a work week of a minimum of five days or forty hours, whichever results in the higher weekly wage."

> [I]n settling upon the meaning of a statute, the components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. [Citations omitted.] If there is a conflict, the special provisions of a statute prevail over the general provisions in the same or other statutes on the same subject.

*Metropolitan Life Ins. Co. v. Kissinger Farms*, 244 Neb. 620, 627, 508 N.W.2d 568, 572-73 (1993).

It would appear that § 48-121(4) requires part-time output workers with permanent disabilities to be treated as though they worked a minimum of a 40-hour workweek or a 5-day workweek. See *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 400 N.W.2d 244 (1987).

However, the trial judge's determination that Fordham worked for $10 per hour during the prior 26-week period, the period to be considered as required by § 48-126, is not supported by any evidence in the record. To attempt to calculate Fordham's average weekly income for the 6 months preceding the accident, as § 48-126 requires, by simply dividing his annual earnings of approximately $7,000 by 52 weeks, yielding approximately $135, does not satisfy this statute. To assume that the $7,000 Fordham received was evenly distributed over the course of a year from this employer may, depending on when he earned it, be "harsh and oppressive." See, *Canas v.*

*Maryland Cas. Co., supra; Clifford v. Harchelroad Chevrolet,* 229 Neb. 78, 425 N.W.2d 331 (1988). The award by the trial judge was not supported by the evidence, and therefore, the affirmance by the review panel was clearly erroneous. See *Pearson v. Lincoln Telephone Co., ante* p. 703, 513 N.W.2d 361 (1994). The award must be reversed and the cause remanded for further proceedings to determine the appropriate wage. The remainder of the judgment is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.