JEAN RAMSEY, APPELLANT,
V. STATE OF NEBRASKA, APPELLEE.
609 N.W. 2d 18

Filed April 7, 2000. No. S-99-683.

Tom Stine, of Boucher Law Firm, for appellant.

Don Stenberg, Attorney General, and, on brief, Carla Heathershaw Risko for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is an appeal from a decision of a workers' compensation review panel which reversed a decision of a single judge of the workers' compensation court. The appeal presents an issue of law regarding the manner in which an injured worker's weekly wage is calculated for the purpose of awarding permanent partial disability benefits under the Nebraska Workers' Compensation Act, Neb. Rev. Stat. §§ 48-101 to 48-1,117 (Reissue 1998).

## BACKGROUND

While employed by the State of Nebraska, Jean Ramsey sustained a compensable injury which resulted in a 5-percent permanent impairment of each hand. In determining the permanent partial disability benefits to which Ramsey was entitled, the State calculated her average weekly wage by using her 26-week wage history pursuant to § 48-126. In this manner, the State determined the average weekly wage to be $249.89 and thus paid permanent partial disability benefits of $166.59 for a total of 17½ weeks pursuant to § 48-121(3). Because payment was not made within 30 days after notice was given of the disability, the State also paid a 50-percent penalty on the calculated amount for the 17½ weeks.

In a series of letters exchanged between counsel, Ramsey disagreed with the State's computation of her average weekly wage

and asserted that the correct amount was $270.80, which would result in a weekly benefit of $180.53. Ramsey arrived at this figure by disregarding her actual 26-week wage history and, relying upon § 48-121(4), multiplying her hourly wage at the time of the injury ($6.77) by 40, which was her usual number of hours worked per week. The State disputed this calculation, and Ramsey therefore filed a motion in the Workers' Compensation Court seeking a determination of the correct computation of her average weekly wage and an assessment of a waiting penalty on amounts she claimed due but not paid. A single judge of the workers' compensation court determined that Ramsey's average weekly wage for purposes of awarding permanent partial disability should be computed by applying § 48-121(4) and multiplying her hourly wage at the time of the injury by a 40-hour workweek, resulting in an average weekly wage of $270.80. The single judge further found that Ramsey was entitled to interest and waiting-time penalties on the amounts not previously paid by the State pursuant to § 48-125. In addition, the single judge awarded Ramsey attorney fees in the amount of $1,500.

The State appealed to the workers' compensation review panel. In a two-to-one decision, the review panel reversed the findings of the single judge based upon its determination that the proper computation of average weekly wage for permanent partial disability was to be made pursuant to the 26-week wage history provision in § 48-126. The review panel corrected a mathematical error made by the State in its computations and established the average weekly wage to be $245.43. The review panel also reversed the award of waiting penalties and attorney fees. In a dissenting opinion, one member of the review panel concluded that Ramsey's average weekly wage was properly computed pursuant to § 48-121(4). The dissenting judge concurred with the panel in part, finding, however, that because there was a genuine dispute between the parties, no attorney fees or waiting-time penalties should be assessed on any amounts not paid.

Ramsey perfected this timely appeal, which we moved to our docket on our own motion pursuant to our obligation to regulate the caseloads of the appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Ramsey assigns, summarized, that the review panel erred in calculating her average weekly wage and in reversing the trial court's award of waiting penalties, interest, and attorney fees.

## STANDARD OF REVIEW

■ An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Jordan v. Morrill County*, 258 Neb. 380, 603 N.W.2d 411 (1999).

■ The determination of how the average weekly wage of a workers' compensation claimant should be calculated is a question of law. *Harmon v. Irby Constr. Co.*, 258 Neb. 420, 604 N.W.2d 813 (1999). Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own determinations. *Hagelstein v. Swift-Eckrich*, 257 Neb. 312, 597 N.W.2d 394 (1999); *Variano v. Dial Corp.*, 256 Neb. 318, 589 N.W.2d 845 (1999).

## ANALYSIS

The sole dispute between the parties involves the manner in which Ramsey's average weekly wage should be calculated for purposes of awarding benefits for permanent partial disability. Because it is undisputed that Ramsey was continuously employed by the State prior to her injury, both parties agree that the starting point is § 48-126, which provides in relevant part:

> Wherever in the Nebraska Workers' Compensation Act the term wages is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. . . . In continuous employments, if immediately prior to the accident the rate of wages was fixed by the day or hour or by the output of the employee, his or her weekly wages shall be taken to be his or her average weekly income for the period of time ordinarily constituting his or

her week's work, and using as the basis of calculation his or her earnings during as much of the preceding six months as he or she worked for the same employer, except as provided in sections 48-121 and 48-122.

The dispute centers upon Ramsey's contention that because she seeks permanent disability benefits, the provisions of § 48-121(4) apply. That statute provides:

For disability resulting from permanent disability, if immediately prior to the accident the rate of wages was fixed by the day or hour, or by the output of the employee, the weekly wages shall be taken to be computed upon the basis of a workweek of a minimum of five days, if the wages are paid by the day, or upon the basis of a workweek of a minimum of forty hours, if the wages are paid by the hour, or upon the basis of a workweek of a minimum of five days or forty hours, whichever results in the higher weekly wage, if the wages are based on the output of the employee.

Ramsey asserts, summarized, that under our statutory scheme, average weekly income for purposes of permanent disability is determined by first making the 26-week history calculation required by § 48-126. However, because of the language in § 48-126 stating "except as provided in sections 48-121 and 48-122," Ramsey asserts that the court must then look to § 48-121(4). She argues that § 48-121(4) requires, in cases such as this where the permanently disabled employee is paid by the hour, that the average weekly wage be calculated again by multiplying the hourly wage earned by the employee at the time of the accident by 40 hours. Ramsey argues that this second "hourly" calculation establishes a minimum, or floor, for the employee's average weekly wage and that therefore, if this calculation results in a higher average wage than the 26-week calculation conducted under § 48-126, the calculation under § 48-121(4) must be used to determine average weekly wage for purposes of awarding permanent partial disability benefits.

In contrast, the State argues that the proper calculation of a worker's average weekly wage for permanent disability is first made under § 48-126. The State agrees that pursuant to the exception language, it is also necessary to refer to § 48-121. The

State, however, interprets the provisions of § 48-121(4) as applicable only to those cases where the 26-week prior-wage history calculation is based upon workweeks of less than 40 hours, i.e., when the permanently disabled employee is a part-time employee. Thus, because Ramsey worked at least 40 hours during each of the 26 weeks preceding her injury, the State argues that § 48-121(4) does not apply.

Our resolution of this dispute is governed by established principles of law. If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *Ameritas Life Ins. v. Balka*, 257 Neb. 878, 601 N.W.2d 508 (1999). In addition, in the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *State ex rel. Stenberg v. Moore*, 258 Neb. 199, 602 N.W.2d 465 (1999); *Parnell v. Madonna Rehab. Hosp.*, 258 Neb. 125, 602 N.W.2d 461 (1999).

The weekly wage of a worker compensated on an hourly basis is a simple function of the hourly rate multiplied by the number of hours worked in a given week. The record in this case reflects, and the parties do not dispute, that Ramsey worked at least 40 hours in each of the 26 weeks which preceded her injury. At the beginning of this period, she was compensated at the rate of $5.337 per hour. At some point during approximately the 18th week of the period, her hourly rate was increased to $6.772 and remained at that level through the 26th week. The essence of Ramsey's argument is that § 48-121(4) requires the use of the hourly rate of pay in effect at the end of the 26-week period in calculating the weekly wage to be used as a basis for computing permanent disability benefits.

We recently addressed a similar issue in *Harmon v. Irby Constr. Co.*, 258 Neb. 420, 604 N.W.2d 813 (1999), in which an injured worker who was awarded both temporary and permanent disability benefits challenged the method by which a review panel of the workers' compensation court calculated the average weekly wage upon which his benefits were based. At issue was a $30 per diem which the worker earned during the 6 days immediately preceding his injury. A single judge of the workers'

compensation court calculated the average weekly wage by adding the amount of the per diem to each day of the 26-week period. We affirmed the review panel's reversal of this calculation, reasoning that application of the $30 per diem to the entire 26-week period would distort the calculation of the average weekly wage pursuant to § 48-126, and thus the review panel "properly concluded that the $30 per diem should be considered income only for the 6 days which [the employee] actually earned it." 258 Neb. at 429, 604 N.W.2d at 820.

We find no language in § 48-121(4) which would require a distortion of the average weekly wage computation by application of an hourly rate for any portion of the 26-week period when it was not in effect. As to hourly employees, § 48-121(4) alters the computation of the average weekly wage under § 48-126 only to the extent that it requires that a minimum of 40 hours per week be utilized in making the computation, which would result in part-time hourly employees with permanent disabilities being treated as though they had worked a 40-hour workweek. See, *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 400 N.W.2d 244 (1987), *disapproved on other grounds, Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990); *Fordham v. West Lumber Co.*, 2 Neb. App. 716, 513 N.W.2d 52 (1994). Section 48-121(4) contains no provision requiring the use of an hourly wage rate different from that which was actually in effect during each of the weeks utilized in computing the average weekly wage. It is not within the province of the courts to read a meaning into a statute that is not there. *Nelson v. City of Omaha*, 256 Neb. 303, 589 N.W.2d 522 (1999).

We disagree with Ramsey's contention that her position is supported by our statement in *McGowan v. Lockwood Corp.*, 245 Neb. 138, 143, 511 N.W.2d 118, 122 (1994), that "[a]ll calculations to be made under the provisions of Neb. Rev. Stat. § 48-121 (Reissue 1988), and amendments thereto, have reference to wages, percentages, and results *as of the time of injury*." (Emphasis in original.) See, also, *Osteen v. A. C. and S., Inc.*, 209 Neb. 282, 307 N.W.2d 514 (1981). The issue in *McGowan* was whether a wage increase received after the date of the injury could be considered in computing the wage upon which permanent disability benefits were based. Resolving that question in

the negative, we noted the language of § 48-126 defining "wages" as used in the Nebraska Workers' Compensation Act to mean " 'the money rate at which the service rendered is recompensed *under the contract of hiring in force at the time of the accident.*' " *McGowan*, 245 Neb. at 143, 511 N.W.2d at 122. This definition, however, demonstrates only that it is the wages earned during the time period *preceding* the injury that are relevant in the computation of permanent disability benefits. The same statute, § 48-126, requires that in continuous employment where the worker is compensated on an hourly basis immediately prior to the accident, the weekly wage

> shall be taken to be his or her average weekly income for the period of time ordinarily constituting his or her week's work, and using as the basis of calculation his or her earnings during as much of the preceding six months as he or she worked for the same employer, except as provided in sections 48-121 and 48-122.

In the present case, § 48-122 dealing with compensation for injuries resulting in death is inapplicable, and as we have noted above, § 48-121(4) is not applicable because Ramsey worked at least 40 hours during each of the weeks utilized in the calculation of her average weekly wage. Moreover, as we noted in *Harmon v. Irby Constr. Co.*, 258 Neb. 420, 604 N.W.2d 813 (1999), § 48-126 does not permit the backward extrapolation of a wage increase so as to distort the average weekly wage actually earned by the worker prior to a compensable injury.

## CONCLUSION

Based upon our independent determination of the question of law presented in this appeal, we conclude for the foregoing reasons that the review panel did not err in determining that Ramsey's average weekly wage was $245.43, based upon her actual earnings during the 26-week period which preceded her injury. Thus, the judgment of the review panel is affirmed.

AFFIRMED.